Charles Barker, III
Elmer V. Dunham
4110 SE Hawthorne Blvd, # 266
Portland, Oregon 97214
Tel: 503-847-6360
FAX: 866-297-6360
mortgagerecon@gmail.com

FILED12 MAY '11 11:44USDC-ORP

Plaintiffs

## UNITED STATES DISTRICT COURT
## STATE OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **CHARLES BARKER, III and**<br>**ELMER VINTON DUNHAM** | And DOES 1-50 |
| **PLAINTIFFS**<br>vs. | CV '11 - 5 7 9     SI |
| GMAC MORTGAGE, LLC.,<br>ALLY FINANCIAL, INC.,<br>JP MORGAN CHASE BANK,<br>WELLS FARGO BANK,<br>WELLS FARGO MORTGAGE,<br>AURORA FINANCIAL SERVICES,<br>Mortgage Electronic Registration Systems, Inc<br>(aka "MERS"),<br>EMC Mortgage, BANK OF AMERICA,<br>BANK OF NEW YORK MELLON,<br>UNITED STATES NATIONAL BANK,<br>(aka US BANK), KEY BANK,<br>First American Title Company<br>Cal-Western Reconveyance Corporation<br>Quality Loan Service Corp of Washington,<br>Fidelity National Title Company<br>LSI Title Company,<br>Executive Trustee Services, LLC<br>Northwest Trustee Services, Inc, | **CASE NO.**<br><br>**COMPLAINT FOR DECLARATORY**<br>**RELIEF, PRELIMINARY AND**<br>**PERMANENT INJUNCTION,**<br>**DAMAGES, CIVIL PENALTIES**<br>**AND PUNITIVE DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

1

## INTRODUCTION

The Plaintiffs, and each of them (hereinafter, "Plaintiffs"), have reasonable cause to believe Defendants GMAC Mortgage LLC ("GMAC "), Ally Financial, Inc. ("Ally"), JP Morgan Chase Bank ("JPMC"), Wells Fargo Bank and Wells Fargo Mortgage ("Wells"), Aurora Financial Services ("Aurora"), Mortgage Electronic Registration Services, Inc. ("MERS"), EMC Mortgage ("EMC"), Bank of America Corporation ("BAC"), Bank of New York Mellon ("BNYM"), US National Bank ("USNB"), Key Bank ("Key"), Quality Loan Service Corporation of Washington ("Quality"), First American Title Company ("FATCO"), LSI Tile Company ("LSI"), Executive Trustee Services, LLC ("Executive"), Cal-Western Reconveyance Corp ("Cal-Western"), Northwest Trustee Services, Inc. ("Northwest"), and Fidelity National Title Company ("Fidelity"), And DOES 1-50, together and collectively referred to as "Defendants", have committed multiple and complex frauds, propounded deceptive and unconscionable acts and practices upon the Plaintiffs, causing egregious harm and financial losses to the Plaintiffs, for the sole purpose of the Defendants own enrichment. The Defendants have used and abused the non-judicial foreclosure processes, purposefully avoiding any reasonable forum for the Plaintiff borrowers to object and to raise defenses to illegitimate foreclosure actions and processes. The Defendants have falsified documents, and obstructed and caused intentional miscarriages of justice by failing to produce documents as would evidence their ownership, and lack thereof, of any Notes or Trust Deeds. The Defendants have acted illegally, in blatant and intentional violations of clear Oregon statues requiring the recordation of any assignment of any Mortgage or Trust Deed in the

same manner and with the same formality as is required for transfers of deeds and ownership. This is codified as ORS 86.060. The creation of MERS was intended to defeat the very protective purpose of the law: that all interests in real property be in the PUBLIC record to be considered valid. The defendant banks and MERS attempt to circumnavigate recordation and thus public notice and disclosure of actual ownership of an interest in real property (which a Trust Deed, by definition, is) should be prosecuted as the intentional egregious acts that they are.

The Defendants have further intentionally and purposefully complicated, delayed and prevented any attempts by the Plaintiffs to reasonably modify the loans to reflect financial and real estate markets and conditions of the economy, and instead attempted to subject the Plaintiffs to double jeopardy by offering loans (by and through their own alleged predecessors, upon whose documents they purport to claim some interest in the property or that money may be owed), of the Defendants own devisement and contraption, without requiring proof of income, then later, when modification is sought by the Plaintiffs, denying loan modification by way of claiming that the Plaintiffs could not furnish proof of income in order to qualify for loan modification. The Defendants, and their predecessors and assignors (upon whose same documents the defendants rely to attempt to foreclose) have intentionally enticed and lured borrowers into accepting loans which bear high rates of interest, and wildly fluctuating interest rates, in many cases even having principal balances *increase*, all for the singular purpose of selling these loans into "secondary" markets, often at prices even higher than the face amount of the note, which practice constitutes profiteering to the extreme harm and detriment of the Plaintiffs. The

3

Defendants have attempted to wrest all of the Plaintiff-borrowers down payment funds and capital improvement monies away from Plaintiffs without just compensation, attempted to unlawfully eject legitimate residents of the homes which are the collateral security for the note instruments at question, used falsified, incomplete and inadequate documents to attempt to improperly take homes away from the Plaintiffs. The Defendants have sought to inequitably and unjustly enrich themselves to the extreme prejudice and detriment of the Plaintiffs, and to benefit from and to unjustly enrich themselves at the expense of the taxpayers of the United States of America by foreclosing on properties, then turning and collecting windfall profits via Federal Deposit Insurance Corporation (FDIC) programs which reimburse lenders based upon the original face value of real estate loans. The Defendants have violated the laws of the State of Oregon, the State of Washington and of the United States of America. The inequity and egregious misconduct on the part of the Defendants must be arrested and rectified.

The above actions of Defendants now aggregate to a clear conspiring and collusion by the Defendants to take money and properties from Oregon property owners by illegal foreclosure practices. Absent the relief prayed for herein, irreparable harm will be suffered by the Plaintiffs.

The Plaintiffs petition this Court for the cause of due protections and enforcement of the laws of this nation, and the equity in due course of law, and to bring cessation of the fraudulent practices and established pattern of behavior caused by Defendants.

## PARTIES

1.    Plaintiff Charles Barker, III ("**Barker**") is an original borrower and direct
      principal party in several of the subject mortgage loans.  He is actively involved
      with the management, and stewardship of all of the properties. He has invested
      over a hundred thousand dollars in down payment funds in the subject
      properties. He has additionally invested over a hundred thousand dollars in
      direct property capital improvements to the subject properties. He has
      personally performed many hundreds of hours of work improving, maintaining,
      managing the subject properties.

2.    Plaintiff Elmer Vinton Dunham ("**Dunham**") is an original borrower and direct
      principal party in several of the subject mortgage loans.  He has had to become
      involved with these properties following the death of his spouse of 58 years,
      Mary Ruth Dunham, who was actively involved in property investment and
      improvement during her lifetime. Mr. Dunham is 92 years of age, legally blind,
      hard of hearing (with dual hearing aids), a veteran of three wars (World War II,
      Korea and Vietnam), and lives on limited social security income. The sole
      residual assets he has left are several of the properties which are the subject of
      this Complaint, plus two other properties (Bluff Road, his former residence, and
      Broadway Drive, an investment property), each of which he had over $60,000
      invested, and both of which were illegally and improperly taken from him by
      GMAC Mortgage at the time when his spouse of 58 years, Mary Ruth Dunham,

was suffering from, and finally passed away in September of 2009 from Alzheimer's Disease.

3.    Defendant **GMAC** is a Delaware limited liability company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

4.    Defendant **Ally** is a Delaware corporation that is the parent of GMAC Mortgage, that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

5.    Defendant **JPMC** is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters

6.    Defendant **Wells** is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

7.    Defendant **Aurora** is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

8.    Defendant **MERS** is, by their own documents, described variously and in a contradictory manner both  "SOLELY AS NOMINEE", simultaneously and falsely pretending to be the beneficiary of the interest in real property, yet also as "possessing only legal title" to all <u>Trust Deeds</u> referenced herein, but not as nominee, beneficiary or trustee or any other capacity for any of the <u>Notes</u> which recite the terms of the financial relationships between the parties.

9.    Defendant **EMC** is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

10.    Defendant **BAC** is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

11.    Defendant **BNYM** is alleged or believed to be a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters

12.    Defendant **USNB** is alleged or believed to be a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

13.    Defendant **Key** is alleged or believed to be a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

14.    Defendant **Executive** is a foreclosure processing company that is actively attempting to conduct a foreclosure and trustees auction of the residential property located at 200 SW Florence, # I-7, Gresham, Oregon, without having proven ownership of the Note or Trust Deed, relying on falsified, incomplete, non-existent and/or intentionally hidden documents, and in violation of state laws and due process.

15.    Defendant **Cal-Western** is a foreclosure processing company that is actively attempting to conduct a foreclosure and trustees auctions of certain of the residential properties, without having proven ownership of the Note or Trust Deed, relying on falsified, incomplete, non-existent and/or intentionally hidden documents, and in violation of state laws and due process.

16.    Defendant **Northwest** is a foreclosure processing company that is actively attempting to conduct a foreclosure and trustees auction of the residential property located at 12010 SE Winston Road, Damascus, Oregon, without having proven ownership of the Note or Trust Deed, relying on falsified, incomplete, non-existent and/or intentionally hidden documents, and in violation of state laws and due process.

17.    Defendant **Quality** is a foreclosure processing company that is actively attempting to conduct a foreclosure and trustees auction of the residential property located at 15268 Penny Avenue, Sandy, Oregon, without having proven ownership of the Note or Trust Deed, relying on falsified, incomplete, non-existent and/or intentionally hidden documents, and in violation of state laws and due process.

18.    Defendant **LSI** is a company registered as a "title company" which appears in some capacity in the subject matters, purporting to transfer interests or to act as a conveying entity, their actual role as yet indeterminate.

19.   Defendant **Fidelity** is a company registered as a "title company" which appears in some capacity in the subject matters, purporting to transfer interests or to act as a conveying entity, their actual role as yet indeterminate.

20.   Defendant **FATCO** is a company registered as a "title company" which appears in some capacity in the subject matters, purporting to transfer interests or to act as a conveying entity, their actual role as yet indeterminate

21.   Defendant **Executive** is a foreclosure processing company that is actively attempting to conduct a foreclosure and trustees auction of certain of the residential properties, without having proven ownership of the Note or Trust Deed, relying on falsified, incomplete, non-existent and/or intentionally hidden documents, and in violation of state laws and due process.

22.   Defendant Does 1-50 are defendant persons and/or entities, the names of which have not been revealed to Plaintiffs

## JURISDICTION AND VENUE

23.   Jurisdiction arises out of diversity of citizenship under 28 U.S.C. 1332 as the Plaintiffs are both citizens of the State of Oregon and defendants are citizens and/or incorporated in others states, and the case involves multiple Promissory Notes, the state and domicile of which owners are as yet unknown to the Plaintiffs. Jurisdiction also exists under 28 U.S.C. Sec 1331 for claims of violations of federal law, Real Estate Settlement Procedures Act ("RESPA"). Certain actions of the defendants have occurred in other states throughout the United States, the actual locations of which have been hidden from the

Plaintiffs, including alleged sales and transfers of the various note assets and execution of documents related to these Notes and Trust Deeds.

24. Jurisdiction over the subject matter of this action lies with this Court pursuant to ORS Title 9, Chapter 86, sections 86.010 to 86.795 and the common law.

25. This court has venue to hear this case pursuant to Oregon ORS Title 9, Chapter 86, sections 86.010 to 86.795 – in that the Defendants conducted activity which gave rise to the claims for relief in several counties in the State of Oregon.

26. The Court has supplemental jurisdiction under 28 U.S.C Sec 1367 over the Oregon state claims because the state claims are closely related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

## STATEMENT OF FACTS

1. In the case of 200 SW Florence, Unit # I-7, Gresham, Oregon [Multnomah County] (hereinafter, "Florence I-7") mortgage foreclosure case, GMAC, and variously Aurora and also variously USNB, claimed and claims to be the holder of the promissory note and mortgage that form the basis for their attempted foreclosure action, yet all have repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents. Subsequent to GMAC claims of ownership, GMAC has

themselves claimed that Aurora was the owner of the Note, later their story

changed that it was USNB. The only documents ever executed by the Plaintiffs

were to Greenpoint Mortgage, and no chain of custody or proof of valid

transfer(s) have ever been produced by any of the Defendants. The true owner

of either the Note or Trust deed is unknown and unproven.

2.      In the case of 1548 SE 30th Avenue, Portland, Oregon [Multnomah County]

(hereinafter, "30th") mortgage foreclosure case, BAC, claimed and claims to

be the holder of the promissory note and mortgage that form the basis for their

foreclosure action, and has repeatedly and persistently refused to produce any

documents whatsoever as would evidence whether they, or any other invisible,

unknown, partially known party or group of parties, are the actual owner or

real-party-in-interest of the Notes or Trust Deed, claiming instead that these are

"privileged", "private", "proprietary" or "confidential" documents. In 2010,

and without any notice, letter, telephone call, recorded memorialization of

transfer, or any other method of communication, from literally nowhere,

BNYM suddenly claimed that *they* were the owner of this Note and Trust

Deed.  Neither BAC nor BNYM have provided any documents whatsoever

(despite Judge Randall Dunn, in an earlier Chapter 11 reorganization case

involving this property, having demanded that BAC & BNYM provide proof

of their ownership and standing in order to be able to appear in the case over

which he was presiding; neither provided so much a single page of such proof].

The only documents ever executed by the Plaintiffs were to Countrywide

Mortgage, and no chain of custody or proof of valid transfer(s) have ever been produced by any of the Defendants. The true owner of either the Note or Trust deed is unknown and unproven.

3.     In the case of 5246 SE Flavel Street, Portland, Oregon [Multnomah County] (hereinafter, "Flavel"") mortgage foreclosure case, BAC, claimed and claims to be the holder of the promissory note and mortgage that form the basis for their foreclosure action, and has repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents. The only documents ever executed by the Plaintiffs were to Countrywide Mortgage, and no chain of custody or proof of valid transfer(s) have ever been produced by any of the Defendants. The true owner of either the Note or Trust deed is unknown and unproven.

4.     In the case of 15268 Penny Avenue, Sandy, Oregon [Clackamas County] (hereinafter, "Penny") mortgage foreclosure case, EMC, and variously JPMC, and also variously Wells, claimed and claims to be the holder of the promissory note and mortgage that form the basis for their foreclosure action, and has repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-

13

interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents. On January 14, 2011, and in direct and flagrant violation of the 15 USC Sec 362(a) Automatic Stay, which precludes a creditor taking any adverse action against a debtor without having first obtained relief from such stay by the bankruptcy court, executed a document purporting to transfer or assign the note to WELLS. WELLS is a heretofore unknown claimant to this Note and/or Trust Deed, and this pattern of behavior is indicative of the arrogance and flagrant disregard for established law covering specifically such assignments. The true owner of either the Note or Trust deed is unknown and unproven.

5.    In the case of 200 SW Florence Avenue, # I-10, Gresham, Oregon [Multnomah County] (hereinafter, "Florence I-10") mortgage foreclosure case, Key claimed and claims to be the holder of the promissory note and mortgage that form the basis for their foreclosure action, and has repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents. The true owner of either the Note or Trust deed is unknown and unproven.

6.    In the case of 1610 SW Broadway, Portland, Oregon [Multnomah County] (hereinafter, "Broadway") mortgage foreclosure case, GMAC, claimed and

claims to be the holder of the promissory note and mortgage that formed the basis for their foreclosure action, and has repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents. The true owner of either the Note or Trust deed is unknown and unproven. GMAC conducted a non-judicial or "trustee's sale" foreclosure on this property in June 2009, without having proven they were the actual owner of *either* the Note or Trust Deed, and in direct violation of clear Oregon laws ORC **86.060 Assignment of mortgage** and **86.735 Foreclosure by advertisement and sale,** without having recorded any of the statutorily recorded transfers, without having provided correct and complete statutory notices, and carried out this act at a time when the original primary borrower, Mary Ruth Dunham was suffering from fast-advancing Alzheimers Disease, her spouse and the family did not have the financial resources to retain and pay for an attorney to file a case to correct this thoughtless, avaricious and heinous transgression.  This taking of this property caused the loss of over $50,000 in down payment funds, plus over $100,000 in direct property capital improvements funds which had been expended by the Dunham and Barker family to renovate and restore this 1895 Victorian home. Mary Ruth Dunham died in September 2009 from Alzheimer's Disease complications.

7.    In the case of the Bluff Road property, Sandy, Oregon [Clackamas County] (hereinafter, "Bluff"), which was the primary residence of Elmer Dunham and Mary Ruth Dunham, mortgage foreclosure case, GMAC, claimed and claims to be the holder of the promissory note and mortgage that formed the basis for their foreclosure action, and has repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents. The true owner of either the Note or Trust deed is unknown and unproven. GMAC conducted a non-judicial or "trustee's sale" foreclosure on this property in June 2009, without having proven they were the actual owner of *either* the Note or Trust Deed, in direct violation of clear Oregon laws ORC **86.060 Assignment of mortgage** and **86.735 Foreclosure by advertisement and sale,** without having recorded in the county records the statutorily required alleged transfer, without having provided correct and complete statutory notices, and carried out this act at a time when the original primary borrower, Mary Ruth Dunham was suffering from fast-advancing Alzheimers Disease, her spouse and the family did not have the kind of financial resources to retain and pay for an attorney to file a case to correct this thoughtless, avaricious and heinous transgression. This taking of this property caused the loss of over $60,000 in down payment funds which had been expended by the

Dunham and Barker family to purchase and renovate this residence. Mary Ruth Dunham died in September 2009 of complications from Alzheimer's Disease..

8.    With the single exception of Key Bank, in <u>all</u> of the above cases, GMAC, ALLY, WELLS, BAC, BNYM, USNB, JPMC, EMC and Aurora are believed to be neither the real party in interest nor the actual owner of the Note. They are but an alleged servicer or sub-servicer for some other or unknown owner, or a trustee holding in a "pool" of hundreds or even thousands of mortgages for investors in certificates claiming ownership interests in the securitized mortgage loans ("the trust").

9.    As a servicer for the actual owner or trust, these Defendants are responsible for: collecting payments on the mortgage loans from borrowers and applying them as required by the applicable documents; communicating with the borrowers about insurance and tax payments the borrowers allegedly owe; and reporting all financial activity to the actual owners of the Notes and all applicable tax authorities. They are also responsible for full disclosure under the Real Estate Settlement Procedures Act ("RESPA") of all information, including within the prescriptions of Qualified Written Requests ("QWR").

10.   Each Defendant which is known to the Plaintiffs has had a RESPA QWR (and multiple follow-up QWR's) served upon them, and each and every Defendant has steadfastly refused to provide any documents whatsoever as would evidence actual ownership of the Note, actual ownership of the Trust Deed, or

as would document the alleged transfers of any such ownership, or evidence of money paid in such purported transfers.

11.    Each Defendant has instead produced only copies of Notes, Trust Deeds and payment histories, but neither original documents nor evidence of any alleged transfers or proving of any current ownership, and instead , claiming these are "privileged", "private", "proprietary" or "confidential" documents.

12.    With the sole exception of Key Bank, none of the Defendants is the original beneficiary of any of the subject Notes or Trust Deeds:

    a.  Florence I-7 was "Greenpoint Mortgage", a demised entity;

    b.  30th was "Countrywide", a demised company, reportedly purchased by BAC for less than a penny for each dollar of asset value;

    c.  Flavel was "Countrywide", a demised company, reportedly purchased by BAC for less than a penny for each dollar of asset value;

    d.  Penny was "Chevy Chase Mortgage", a demised entity absorbed into or purchased by JPMC for an unknown and as-yet undisclosed fraction of the face value of the note assets acquired;

    e.  Florence I-10 was Key Bank, believed to be unchanged.

    f.  Broadway was "Greenpoint Mortgage", a demised entity; now GMAC attempts to claim some manner of interest, if they did (which is not known), no disclosure has been made of what fraction of the face amount of the loan was paid by GMAC.

g. Bluff was "Greenpoint Mortgage", a demised entity; now GMAC attempts

to claim some manner of interest, if they did (which is not known), no

disclosure has been made of what fraction of the face amount of the loan

was paid by GMAC.

and no relationships or alleged obligations  by the Plaintiffs to any subsequent alleged

beneficiary have been proven or demonstrated by any of the Defendants whatsoever.

13. In the special case of EMC, there transpired an egregious instance of bad faith and

intentional attempts to mislead Mr. Dunham with a written repayment agreement,

including recital and commitment to writing of a restructured loan Agreement with

affordable monthly payments, upon which the borrower reasonably relied; this letter

dated July 29, 2009, and the record of payments made in accord with that payment

agreement, are attached as exhibits hereto.  EMC purposefully and willfully attempted to

trick Mr. Dunham [who was being assisted by his daughter Janice, who ceaselessly and

tirelessly expended untold hours, days, telephone calls, faxes, letters, going out and

obtaining support documents from the US Veterans Administration, Social Security

Administration, Kaiser Hospital, Multnomah County Aging and Disability Services, all

attempting to satisfy the endless demands of EMC for more documents], by drafting,

sending out and entering into this written payment agreement (which had no termination

or sunset date); Mr. Dunham made each and every such payment in precise accord with

the schedule as set forth by EMC, and then suddenly, and without good cause,  or any

cause whatsoever, EMC abrogated and dishonored their own agreement in September

2010, suddenly deeming their then to be no payment agreement in place, thereafter began

to send all subsequent Western Union funds transfers and tender of payments back,
refusing to continue with the Agreement they had themselves established.

## FIRST CAUSE OF ACTION

### Violations of Oregon Revised Statues

1. Plaintiffs incorporate by reference as if completely rewritten herein, the facts and
allegations hereinabove set forth Complaint.

2. Defendants, and each of them, have engaged in a pattern and practice of unfair,
deceptive, and unconscionable acts in violation of Oregon Revised Code§§86.010 to
86.795 by authorizing and directing the filing of affidavits, assignments and other
documents that were false and by proceeding to foreclosure on properties in spite of the
false affidavits, assignments and other documents.

3. Defendants, and each of them, have engaged in a pattern and practice of unfair,
deceptive, and unconscionable acts in violation of Oregon Revised Code §§  86.010 to
86.795 by conducting their improper and illegal  mortgage foreclosure activities, by
benefiting financially from the filing of false affidavits, the filing of incorrect
assignments and other documents, and by proceeding with foreclosure proceedings in
spite of the affidavits, assignments and other documents that were false, by concealing,
hiding, failing to produce, and potentially destroying documents as may evidence
ownership or the real parties in interest of the subject Notes and Trust Deeds.

4. Defendants, and each of them, have intentionally and institutionally established a
practice that is in direct violation of ORS **86.060 Assignment of mortgage** and **86.735
Foreclosure by advertisement and sale,** which recite:

"Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.

This practice, which by their own admission is for their own "convenience", has been used by Defendants, and in particular (but not limited to) MERS, to secret and conceal the true ownership of the very Notes and Trust Deeds which are the purported basis for the Defendants attempting to conduct foreclosure actions against the Plaintiffs and other Oregon citizens.

5. In violation of Oregon law, with the sole exception of EMC Mortgage [and EMC now appears to not be the owner, or have any authorization to negotiate any modification, as the owner of the Note & Trust deed are unknown and unproven], each and every one of the Defendants failed to make contact with, call, meet with, telephone, write a letter to, email, communicate in any manner, or even respond to the numerous and repeated attempts by the Plaintiff to attempt to derive a loan resolution or negotiated modification of the Note and terms and payments related thereto, this despite the Plaintiffs repeated attempts to contact and engage such a resolutions, and making known and available all contact information, including mailing address, telephone numbers and email addresses. The Plaintiffs have suffered damages including the loss of their savings and down payment funds exceeding $120,000.00 from the Bluff and Broadway foreclosures, and will suffer loss in excess of $200,000.00 in the remaining properties should the foreclosures be allowed to conclude.

## SECOND CAUSE OF ACTION

### Common Law Fraud

21

6. Plaintiffs incorporate by reference as if completely rewritten herein, the facts and allegations hereinabove set forth Complaint.

7. All of the elements of fraud are present. The Defendants, and each of them, and their employees, agents, attorneys, contractors and assignees, have signed affidavits and other documents in these Oregon foreclosure proceedings  (a) which contained representations, (b) which were material to the foreclosure proceedings, (c) some of which were made with knowledge of the falsity and others which were made with utter disregard for whether they were true or false, (d) which were made with the intent of misleading the courts and opposing parties into relying upon them, and upon which the courts and the opposing parties justifiably relied.

8. The Defendants directed their affiliate companies, and assignees and agents in conducting mortgage foreclosure activities in Oregon, benefiting financially from the filing of false affidavits, assignments and other documents.  These were (a) representations made at the direction of Defendants (b) which were material to foreclosure proceedings, (c) which were made with knowledge of their falsity or with utter disregard for whether they were true or false, (d) which were made with the intent of misleading the courts and opposing parties into relying upon them, and on which the courts and the opposing parties justifiably relied.

9. The Defendants have attempted to conduct foreclosure proceedings outside Court scrutiny in a "notice and sale" process, also known as a "non-judicial foreclosure" process, intentionally to avoid accountability, and to abort and avoid defenses lawfully available to the party from whom the property is being taken or which attempts are being

22

made to take such property. This is done purposefully and intentionally by lenders, banks, mortgage servicing companies, foreclosure processing companies and title companies to avoid having to produce proof of Note and Trust Deed ownership, and to conceal defects in their chain of title and assignments. All of the subject cases are statutorily defective, due to their having failed to comply with the clear specification of not merely one, but two Oregon Statutes:

**86.060 Assignment of mortgage.** Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.

Thus, all attempts to transfer or assign the mortgage, as has been attempted by MERS, are **statutorily defective**, as this section clearly recites the requirement of <u>the same formality as required in deeds and mortgages, and recorded in the records of morgages of the county where the land is situated.</u>  These notes are therefore still owned by the original mortgage beneficiary, which is the ONLY party that has authority to conduct any foreclosure proceeding.

**86.735 Foreclosure by advertisement and sale.** The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:

> (L) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated; and

This further reiterates 86.060.  Non-judicial foreclosure is ONLY allowed if any assignments were recorded in the mortgage records of the county, which were not done in any of the subject cases.  All MERS assignments and transfers are statutorily defective..

The Plaintiffs have suffered damages including the loss of their savings and down payment funds exceeding $120,000.00 from the Bluff and Broadway foreclosures, and will suffer loss in excess of $200,000.00 in the remaining properties should the foreclosures be allowed to conclude.

The system of justice in Oregon, and the citizens and borrowers of Oregon have suffered and are suffering irreparable injury by the actions of the Defendants, and there is no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Fraud

10. Fraud upon the court may be present in that the Defendants may not have ANY provable interest in the Notes and Trust Deeds, and that the supposedly unavailable original note is not lost, but may have been intentionally destroyed due to missing assignments on the note which may have made it void and a legal nullity, thus they have expunged and exploited key and vital evidence.

11. Notes are pledged, sold, bifurcated, and traded in various derivative transactions. Only possession of the actual original note can prove the actual owner and holder in due course of the note, and to whom one can make an offer of payment to for purchase or modification of the note, or who may attempt prosecution of any foreclosure.

12. A "nominee" such as MERS has no legal authority to foreclose upon the Plaintiffs. MERS also maintains a defective claim to simultaneous status as "nominee" and as "holding only legal title", two clearly contradictory roles and definitions.

**MERS pretends to be a "beneficiary", but is not; they have never had any financial interest whatsoever in the Trust Deed, loaned not a single penny to the Plaintiffs, and paid not a single penny to acquire any of the Trust Deeds, and thus cannot gain any right to claim they were an actual *beneficiary*.**

13. Other unnamed and disclosed real parties in interest may have a claim to the note and be the rightful beneficial owners to the note and must be identified and brought before the court.

14. Absent the original Note and Trust Deed, and a complete and verifiable chain of assignments, the subject Note may have been destroyed or lost intentionally, and attempting to hide the beneficial owners and shield them from any assignee liability arising from the actions of the servicer who they hire and supervise.

15. Any subsequent endorsements following loan origination are demonstrably not in the records of the county recorder, and may have not been recorded to avoid payment of taxes and to hide true and real beneficial interests.

16. The subject Notes appear to have been traded or otherwise "assigned" repeatedly and often, even in the few years of their existence. The Plaintiffs have a right to inspect the physical note to see who the real prior parties were, that allegedly held and endorsed the note, as counter and cross claims may exist against them and need to be brought before court for the action, which may include improperly inflated principal balances, amounts owed or escrow account by not applying payments correctly; adding fees not legally owed by the borrower to the principal balance; miscalculating the interest and not properly amortizing the loan; fraudulent selling of the loan or misreporting of credit report information.

The Plaintiffs have suffered damages including the loss of their savings and down payment funds exceeding $120,000.00 from the Bluff and Broadway foreclosures, and

will suffer loss in excess of $200,000.00 in the remaining properties should the foreclosures be allowed to conclude.

## FOURTH CAUSE OF ACTION

### Gross Financial Inequity

17. The Plaintiffs have suffered from gross financial inequity, as lender is protected by three governmental guarantees:

        i.      FDIC 80% lender guarantee based on *original* note balance

        ii.     Mortgage Insurance policies risk-of loss insurance not available to borrowers

        iii.    TARP bailout funds distributed to GMAC, Wells, JPMC, USNB, BAC, Key, and AIG (the latter being holder of 70% of all insurance exposure for mortgage insurance policies in the United States)

while the borrowers have no similar protections whatsoever, thus an egregiously inequitable situation is extant.

18. Inequity due to gross imbalance of financial and legal resources at the disposal of banks, compared to the financially disadvantaged consumer borrowers, as a matter of "equity" in the courts. The Plaintiffs herein do not have financial resources to even hire a single attorney, while the Defendants have, in any comparative measure, effectively unlimited financial and legal resources at their disposal, and bring them to bear against the disadvantaged Plaintiff, as Defendants work assiduously to avoid a case precedent that is expositive of their abuses in non-judicial foreclosures, fraudulent activities, and flagrant violations of Oregon State law, their profiteering at the expense of total and

catastrophic losses by property owners, who are at risk of the loss of ALL of their down payment savings and monies invested in capital improvements, while the banks are protected by insurances and taxpayers monies to which the homeowners have no access.

## FIFTH CAUSE OF ACTION

### RESPA Violations and Obstruction of Justice

19. Despite repeat submissions under RESPA Qualified Written Requests (QWR's), (and there exists no statutory standard form for QWR's, only format guidelines, all of which were assiduously adhered to by the Plaintiffs) each and every one of the Defendants failed to produce even a single page of the documents that were actually requested (evidences of legal transfer, proof of custodianship of original documents, current location of original documents, chain of custody of original documents, certified copies of blue ink signed original notes and trust deeds, evidence of amounts paid at each alleged transfer). Instead, when they responded at all, they provided only copies of the Note, Trust Deed, and sometimes a partial payment history or the HUD-1 closing statement documents (of which the Plaintiffs had multiple copies, and were thus not requested), NONE of which were executed in favor of the Defendants who are now attempting to claim some manner of ownership. All Defendants steadfastly and persistently refused to supply any documents which would connect them to any present day claim of ownership, claiming they were "privileged", "private" "proprietary" or "confidential".

This intentional and purposeful failure to produce documents  constitutes no less than a clear violation of Federal law, under RESPA, 12 USC Section 2605, and an

obstruction of justice by Defendants.

## SIXTH CAUSE OF ACTION

### Unfair and Bad Faith Dealing

20. The Defendants, and each of them, have engaged in practices which constitute Unfair

and Bad Faith Dealing, with a secret hidden agenda of making it appear to the public that

they are negotiating mortgage modifications in earnest, when they are actually

completing only a select few (statistically, less than 4% of all mortgages which are in

arrears, in default, or have been foreclosed in last 24 months were recast into permanent

modifications)) that "fit" the federal Homeowner Retention Plan, and even deceiving

their own staff members (who are fed the "company line" and perhaps genuinely believe

they are actually trying to get workouts completed), with the real agenda being to take the

property, thus be able to declare and quantify the "loss", and recover money (that is,

taxpayer money) based on the *face value* of the original note, irrespective of what they

actually paid for it (this, of course, is why the lenders fiercely persist in failing to turn

over evidentiary documents, it is why they created MERS to further hide and conceal the

ownership transfers, and why the Defendants pretend they don't have them, produce only

copies of the note and Trust Deed, but not the ownership, transfer or *amount paid*

documents.

Because of this unfair and bad faith dealing, the Plaintiffs have suffered damages

including the loss of their savings and down payment funds exceeding $120,000.00 from

the Bluff and Broadway foreclosures, and will suffer loss in excess of $200,000.00 in the

remaining properties should the foreclosures be allowed to conclude.

## SEVENTH CAUSE OF ACTION

### Contravention of Reasonable Public Policy

21. The Defendants, and each of them, have engaged in practices which constitute a

contravention of reasonable public policy, by dislocating one resident, and entire

families, causing massive life disruption, loss of jobs, forced move to different schools,

economic hardships, emotional distress, and even breakup of families. The Defendants

attempt to foreclose, throw the owner or resident tenant out on the street, then sell or rent

to someone else for a reduced price due to the state of the market (not to be confused with

the lenders actually suffering a fiscal loss, as the banks/lenders are protected by FDIC

insurance, and often paid only a fraction of the face value of the note, and thus already

profit at the time of the foreclosure sale). This contravenes reasonable Public Policy, in

dislocating American persons and families merely to serve the financial agenda of the

banks, and it is incumbent upon the court to see to the cessation of the rampant

proliferation of the same.

Elmer Dunham, and his wife Mary Ruth Dunham, both in their 80's at the time of

the Bluff foreclosure, were forced out of their home by GMAC.

Because of this profligate and institutionalized practice of the Defendants, the

Plaintiffs have suffered damages including the loss of their savings and down payment

funds exceeding $120,000.00 from the Bluff and Broadway foreclosures, and will suffer

loss in excess of $200,000.00 in the remaining properties should the foreclosures be

allowed to conclude.

## EIGHTH CAUSE OF ACTION

### Windfall Profits

22. Judicial Notice is requested to recognize that none of the defendant banks that have

been "burdened" with taking over failed institutions, i.e. Bank of America taking over

Countrywide; Wells Fargo taking over Wachovia & World Savings, One West taking

over IndyMac, JP Morgan Chase taking over Washington Mutual, Capital One taking

over Chevy Chase...this was little other than a back-room card game, doling out the

monumentally valuable (made more so by their loans being guaranteed by the federal

government in the process) assets completed secreted from public scrutiny. It is no

happenstance that one does not hear of banks complaining that they have been forced to

take over so-called "toxic assets"; this is because they are secretly monumentally

profiting, as described hereinabove. This has set the stage for windfall profits to be

reaped by the banks, to the gross prejudice and harm of the Plaintiffs. This is why we

observe GMAC, JP Morgan Chase, Bank of America, Wells Fargo and the other giant

banks reporting, in the preceding five fiscal quarters, the *largest profits in their*

*histories*...it is not due to new lending activity (which they are not doing) or due to

efficiencies and reductions in expenses, it is because they purchase the batches of home

loans, or even entire former institutional mortgage lenders, for a fraction of their face

value.

      Example: Bank of America acquired all assets and receivables of Countrywide

Mortgage for less than one cent on the dollar, in a secret, out of public scrutiny, weekend

meeting; they are happy to foreclose on a $100,000 loan they paid $1,000 for, make it

appear that they are "suffering" because they are "only" getting, say, 50% of the amount

due, for example, $50,000 from the foreclosure sale, then turning the claim which is now

quantified (which only occurs when they *complete* the foreclosure, and thus quantify the

"loss") in for "loss coverage" to FDIC, which pays them the difference between the

amount received and the 80% of the **face value of the note**, which equals $80,000; thus,

they get $30,000 from FDIC, plus the $50,000 from the roughshod foreclosure; therefore,

they are receiving $80,000.00 for a note for which they paid $1,000.  A more profitable

scheme is scarcely able to be conceived.  This is a 7900%  return on investment, a

monumental windfall.

The Plaintiffs have no such protections, and no similar access to windfall profits.

Instead, the Plaintiffs have suffered, and continue to suffer damages including the loss of

their savings and down payment funds exceeding $120,000.00 from the Bluff and

Broadway foreclosures, and will suffer loss in excess of $200,000.00 in the remaining

properties should the foreclosures be allowed to conclude.

## NINTH CAUSE OF ACTION

### Contracts of Adhesion

23. In each and every instance, the loan documents which were presented to the Plaintiffs

were entirely of the lender own devisement. If the borrowers wished to purchase a home,

they had no choice but to sign the documents placed in front of them by the lenders.

Thus, the Plaintiffs were afforded no opportunity to propose amendments, or adjust

language to create balanced lender-borrower contractual relationships. These are true

contracts of adhesion: sign it or get out of the office.  Worse still, these documents are

lengthy tomes, which contain language that even many persons in the industry cannot decipher or interpret, such as in reference to MERS: with their recitals of simultaneous status as "nominee" and as "holding only legal title", but then later claiming to be the "beneficiary", with unbridled self-appointed license to assign and transfer with wanton disregard for state law.  So profligate is the "industry standard" of presenting pre-printed contracts with no chance for the other party to suggest language and content for their own protection, that lenders have adopted the undeniably arrogant position that their loan documents are irrefutably appropriate. Moreover, lenders, the Defendants herein,  adopt this presumptive posture for the sake of their own "efficiency" and "uniformity", such that they retain absolute control and the upper hand in the event of any later loan disagreement or "default", with lenders having effectively sole position to unilaterally assert (merely by their own proclamation, with no supporting evidence or documentation) that a default is purported to have occurred, and thus abjectly unfair and imbalanced rights to circumnavigate any judicial forum, or even requirement that they proving that any default has occurred. This reason alone is good cause for the rejection of the loan "agreement" as a valid document on which any lender, much less the undefined and unproven purported claim of interests of the subject Defendants, could rely to prosecute a foreclosure and to wrest away the savings, work, and money from the Plaintiffs.

The Plaintiffs have suffered damages including the loss of their savings and down payment funds exceeding $120,000.00 from the Bluff and Broadway foreclosures, and will suffer loss in excess of $200,000.00 in the remaining properties should the foreclosures be allowed to conclude.

## TENTH CAUSE OF ACTION

### Intentional Enticement and Profiteering

24. The Defendants, and their predecessors and assignors (upon whose same documents the Defendants rely to attempt to foreclose) have intentionally enticed and lured borrowers into accepting loans which bear high rates of interest, and wildly fluctuating interest rates, in many cases even having principal balances *increase*, all for the singular purpose of selling these loans into "secondary" markets, often at prices even higher than the face amount of the note, which practice constitutes profiteering to the extreme harm and detriment of the Plaintiffs. The Defendants, and their predecessors, designed, produced and marketed loans to the public that were intentionally and purposefully crafted to increase loan origination volumes by removing any requirement of reasonable ascertaining of borrower income capacity to make loan payments, and then worsened the situation by creating and participating in a "secondary market", often called "Mortgage Securitization", where batches of home loans were packaged into "portfolios", and sold to other investors and institutions; moreover, and worse still, these lenders were motivated to charge the *highest* rate possible to the borrowers, as the higher rate notes were worth more in these secondary markets, in *many cases even more than the face amount of the loan.*

25. The Defendants cannot bifurcate and distance themselves from the original circumstances and actions of the original lenders, as it is on these same loan documents on which they purport to be able to claim any interest in the properties, and thus attempt to conduct any foreclosure sale, provided, of course, that they can even document and

prove a legally valid chain of ownership in accord with Oregon Revised Statutes). The Defendants cannot selectively pluck out the portions which describe security interests or foreclosure, and yet not select the terms and situation under which the loans were propounded upon the borrowers.

26.Each and every loan in the instant case is a "no-income qualifier"; that is, the lenders, by loan guidelines which were entirely of their own devisement, and about which loan underwriting criteria the borrowers had no say or input whatsoever, approved the borrowers while *intentionally* ignoring analysis of the borrower's ability to pay the proposed payments.

27.Each loan herein included a high rate of interest, the lowest fixed rate was 9.0%, the highest 11.99%, and all of the other loans had wildly fluctuating interest rates, in all variable loans these included a deceptively low initial payment, which caused the principal balances to increase (so called "negative amortization"), thereafter to reach a "ceiling" , and suddenly have the payment double, or even worse, to payment amounts which were abjectly unattainable by the borrowers, and to which property rent levels could not be doubled to make such payments.

28.These lenders, and the Defendants herein, did this for one reason: **profiteering**, to the extreme detriment and harm of borrowers and the Plaintiffs.

29.This alone is sufficient cause for these loans to be voided completely. When viewed in the context of all of the other causes of action, there is more than ample grounds for these loans to be declared unenforceable in toto.

The Plaintiffs have suffered damages including the loss of their savings and down payment funds exceeding $120,000.00 from the Bluff and Broadway foreclosures, and will suffer loss in excess of $200,000.00 in the remaining properties should the foreclosures be allowed to conclude.

30. Moreover, the Defendants, and each of them, must be adequately remonstrated for their participation in propounding these loans upon the public, making, buying, selling these loans, profiteering, inflicting harm and suffering upon the Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. ISSUE a preliminary and permanent injunction enjoining all Defendants (doing business under any name, their agents, partners, servants, attorneys, representatives, subsidiaries, parent companies, alleged owner or alleged real-party-in-interest of the Note and/or Trust Deed, employees, successors and assigns and all persons acting in concert and participation with them, directly or indirectly, through any corporate device, partnership or association):

From proceeding with foreclosure on any of the properties which are the subject of this action: Florence I-7, 30th, Flavel, Florence I-10 and Penny.

B. ORDER the production of all documents which may evidence ownership of the Notes and Trust Deeds, including all chain of such transfers of ownership, for each property described herein: Florence I-7, 30th, Flavel, Florence I-10, Penny, Bluff and Broadway.

C. ORDER the productions by Defendants of the actual blue-ink original Note, Trust

Deed, and all related closing documents and the disclosure of the name, precise current

location and detailed contact information for the actual custodian of these documents, for

each property described herein: Florence I-7, 30th, Flavel, Florence I-10, Penny, Bluff and

Broadway.

D. ORDER the production of all documents, payments, wire transfers of funds, checks,

and all other which evidence the actual amount(s) paid at each and every transacting of

the chain of ownership of the Notes and Trust Deeds herein, for each and every property

described herein: Florence I-7, 30th, Flavel, Florence I-10, Penny, Bluff and Broadway.

(these documents speak to both evidence/lack of evidence of a bona-fide purchase of an

asset, as well as matters of doctrine of equity: if a mortgage holder or bank has acquired a

note and trust deed for only a tiny fraction of its face amount, then tries to collect on that

face amount, or worse, tries to foreclose on the property owner, as a matter of equity, this

imbalance must be addressed);

.E.  ENJOINING Defendants (doing business under any name, their agents, partners,

servants, attorneys, representatives, subsidiaries, parent companies, owner or alleged real-

party-in-interest of the Note and/or Trust Deed, employees, successors and assigns and all

persons acting in concert and participation with them, directly or indirectly, through an

corporate device, partnership or association) from executing any assignment that purports

to assign a Note or Trust Deed on behalf of MERS;

F.  ORDER Defendants to pay actual and non-economic damages deriving from the

conduct of the Defendants.

G.    AWARD to Plaintiff punitive damages in an amount determined by the Court;

H.    ORDER Defendants which have common business associations or are partnered as

loan servicer, alleged note owner, title company, "trustee" holding interests for another

party, "mortgage-backed securities portfolio", or investment company, to be jointly and

severally liable for all monetary amounts awarded herein;

I.    ORDER Defendants to pay Plaintiff its attorney fees, court costs incurred in the

prosecution of this action, other litigation expenses including the expenses associated

with retaining experts, and any other relief the Court deems appropriate; and

J.    GRANT such other relief as the court deems to be just, equitable and appropriate;

Respectfully Submitted,

_____

**Charles Barker, III, PLAINTIFF**


_____

**Elmer Vinton Dunham, PLAINTIFF**



## DEMAND FOR JURY TRAIL

Please take notice that Plaintiff demands a trial by jury in this action.