## POINTS AND AUTHORITIES

1. Donald McCoy, III v. BNC Mortgage, et al.,
   The Honorable Frank R. Alley III presiding, Chief Judge of the US bankruptcy
   Court, Eugene Division, District of Oregon; Memorandum Opinion Filed 02/07/11

   <u>IN RE: Adversary Case No. 10-6224-fra  Donald E. McCoy, III,</u>

   Debtor/Plaintiff received a loan in 2005 from Defendant BNC Mortgage secured
   by real property in Central Point, Oregon.  BNC Mortgage was listed on the trust
   deed as the "Lender" and Defendant MERS was listed as "Grantee."  Page 3 of the
   trust deed document described the "Beneficiary" as "MERS (solely as nominee for
   Lender and Lender's successors and assigns) and the successors and assigns of
   MERS. "The loan went into default and MERS executed an Appointment of
   Successor Trustee and an Assignment of Trust Deed to US Bank NA.  Thereafter
   the Successor Trustee executed and recorded documents required under Oregon's
   Trust Deed Statutes.  Plaintiff filed a lawsuit in Oregon Circuit Court for Jackson
   County for Wrongful Foreclosure and to Quiet Title.  The action was removed to
   Federal District Court and transferred to Bankruptcy Court when Plaintiff filed
   bankruptcy. The Complaint alleges that there were a number of unrecorded
   assignments of the beneficial interest in the trust deed before MERS assigned the
   beneficial interest to Defendant US Bank NA, Trustee of the Structured Asset
   Securities Corporation Loan Trust Mortgage Pass-Through Certificates, Series
   2005-10, which then transferred the loan into a loan pool.  It seeks to quiet title in
   Plaintiff by alleging that the only persons who were ever owed any money from
   Plaintiff's loan were the investors of the Loan Trust, and that those investors were
   completely paid from one or more of the following sources: income from the trust,
   credit default swaps, TARP money, federal bailout funds.  Defendants MERS and
   US Bank NA filed a motion to dismiss the complaint.
   Court Ruling: Wrongful Foreclosure: Under Oregon trust deed law, the
   "Beneficiary" of the trust deed was not MERS, but the Lender BNC
   Mortgage.  While a trust deed may authorize the delegation of a beneficiary's
   powers to a nominee, those powers cannot exceed the powers of the
   beneficiary.  The beneficiary's right to require a non-judicial sale is limited by
   ORS 86.735, which requires that all transfers of the beneficial interest be recorded
   in the county records.  As the complaint alleges that there were unrecorded
   transfers, the motion to dismiss was denied on the wrongful foreclosure
   claim.  The Court noted that judicial foreclosure of a trust deed is authorized under
   ORS 86.710 and, when foreclosed judicially, the trust deed is treated as a
   mortgage. Reading these two statutes together, it is clear that non-judicial
   foreclosure is available in Oregon only when the interest of the beneficiary is
   clearly documented in the public record.

2. U.S. Bank N.A. v. Ibanez and Wells Fargo Bank NA v. LaRace et al, Supreme Judicial Court of Massachusetts, No. SJC-10694.

In a decision that may affect foreclosures nationwide, Massachusetts' highest court voided the seizure of two homes by Wells Fargo & Co and US Bancorp after the banks failed to show they held the mortgages at the time they foreclosed.

The Supreme Judicial Court of Massachusetts on Friday issued its decision, which upheld a lower court ruling.

The unanimous decision is among the earliest to address the validity of foreclosures done without proper documentation. That issue last year prompted an uproar that led lenders such as Bank of America Corp, JPMorgan Chase & Co and Ally Financial Inc to temporarily stop seizing homes.

Wells Fargo and U.S. Bancorp lacked authority to foreclose after having "failed to make the required showing that they were the holders of the mortgages at the time of foreclosure," Justice Ralph Gants wrote for the Massachusetts court.

In a concurring opinion, Justice Robert Cordy lambasted "the utter carelessness" that the banks demonstrated in documenting their right to own the properties.

Massachusetts Secretary of State William Galvin said he agrees with the ruling, which he said demonstrates the need for judicial review of foreclosures in the state to give homeowners more protections.

Courts in other U.S. states are considering similar cases, and all 50 state attorneys general are examining whether lenders are forcing people out of their homes improperly.

Friday's ruling "will be certainly cited as persuasive authority " said Robert Nislick, a real estate lawyer at Marcus, Errico, Emmer & Brooks PC in Braintree, Massachusetts.

"What they were doing was peddling these mortgages and leaving the paperwork behind," said Michael Pill, a partner at Green, Miles, Lipton & Fitz-Gibbon LLP in Northampton, Massachusetts, who represents homeowners and is not involved in the case.

In the Massachusetts case, U.S. Bancorp and Wells Fargo had said they controlled through different trusts the respective mortgages of Antonio Ibanez and the married couple Mark and Tammy LaRace, who lost their homes to foreclosure in 2007.

The banks bought the Springfield, Massachusetts, homes in foreclosure, and sought court orders confirming they had title. A lower court judge ruled against them in March 2009, and Friday's decision upheld this ruling.

Massachusetts is one of 27 U.S. states that do not require court approval to foreclose.

"It is the first time the supreme court of a state has looked straight at securitization practices and told the industry, you are not immune from state statutes and homeowner protections," Paul Collier, a lawyer for Ibanez, said in an interview. The Supreme Judicial Court also rejected the banks' request that the ruling apply only in the future, leaving homeowners who had already been foreclosed upon without a remedy.

"I'm ecstatic," Glenn Russell, a lawyer for the LaRaces, said in an interview. "The fact the decision applies retroactively could mean thousands of homeowners can seek recovery for homes wrongfully foreclosed upon."

Russell said the LaRaces moved back to their home after the 2009 ruling, while Collier said Ibanez has not. "U.S. Bancorp will have to compensate him in exchange for the deed, or will have to walk away," Collier said.

Gants did suggest in his opinion how banks might properly transfer mortgages via securitization trusts.

"The executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder," Gants wrote. "However, there must be proof that the assignment was made by a party that itself held the mortgage."

3. The public interest is served by ensuring that foreclosure sales only occur when

   there is no defect in the preceding property transaction (See Rinegard-Guirma v.

   Bank of America, 10-1065-PK, in opinion by Judge Garr King)

4. Federal Circuit Courts have ruled that the only way to prove the perfection of any security [including promissory note] is by actual possession of the security. Current or prior possession must be proved up.

5. Where the complaining party cannot prove the existence of the note, then there is no note.
   *See Pacific Concrete F.C.U. V. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001).

6. To recover on a promissory note: the Note and Turst Deed owner must prove:
   (1) the existence of the note in question;
   (2) that the party sued signed the note;

Case 3:11-cv-00579-MO    Document 1-1    Filed 05/12/11    Page 4 of 26

(3) that the foreclosing party is the owner or holder of the note; and

(4) that a certain balance is due and owing on the note. *See In Re: SMS Financial LLC. v. Abco Homes, Inc. No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)*

*Volume 29 of the New Jersey Practice Series, Chapter 10 Section 123, page 566, emphatically states*, "…; and no part payments should be made on the bond or note unless the person to whom payment is made is able to produce the bond or note and the part payments are endorsed thereon. It would seem that the mortgagor would normally have a Common law right to demand production or surrender of the bond or note and mortgage, as the case may be. *See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469, in Carnegie Bank v, Shalleck 256 N.J. Super 23 (App. Div 1992),* the Appellate Division held, "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302"

7. **86.020 Covenant to pay money not implied.** No mortgage shall be construed as implying a covenant for the payment of the sum thereby secured.

   Thus, the holder of a Trust Deed holds no instrument that contains any requirement of payment, and thus cannot be in default if bifurcated from Note, which may be held by some other or unknown party, and no default of said Note is yet proven.

8. **86.060 Assignment of mortgage.** Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.

   Thus, all attempts to transfer or assign the mortgage, as has been attempted by MERS, are **statutorily defective**, as this section clearly recites the requirement of the same formality as required in deeds and mortgages, and recorded in the records of morgages of the county where the land is situated.  These notes are therefore still owned by the original mortgage beneficiary, which in many cases are lenders that are no longer extant.

9. **86.735 Foreclosure by advertisement and sale.** The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:

   (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated; and

43

This further reiterates 86.060. Non-judicial foreclosure is ONLY allowed if any assignments were recorded in the mortgage records of the county, which were not done in any of the subject cases.

Since the Defendants, and each of them, have steadfastly refused to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. Oregon law dictates that that proof must be made as to the existence of the alleged note in question, prove that the party against whom a foreclosure is being attempted signed the alleged note, prove ownership of the alleged note, and prove that certain balance is due and owing on any alleged note. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security.

**10.Supporting Case Law**
Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory.

*See Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977).* "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bankruptcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession. .

11. MERS is a corporation created by the mortgage banking industry whose shareholders consist of banks and other financial institutions, including Defendant GMAC Residential Funding Corp., also a subsidiary of Defendant Ally.

MERS was created by the mortgage banking industry to supposedly streamline the mortgage process and "save money" by using electronic commerce to eliminate paper and the need to file assignments of mortgage every time a mortgage was transferred in the securitization process or subsequent changes in servicing.

44

MERS claims, to wit: "Our mission is to register every mortgage loan in the United States on the MERS System.  Beneficiaries of MERS include mortgage originators, servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers, investors, and consumers.  MERS acts as 'nominee' in the county land records for the lender and servicer.  Any loan registered on the MERS System is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded."

Unless MERS is the plaintiff in a foreclosure case, MERS does not hold the note of a borrower and is not named in the note or any transfer of the note, but simply is named the secured party in the mortgage filed in the local real estate records as the nominee of the note holder.

When a trustee of a securitized transaction initiates a foreclosure action, the servicer, sub-servicer or its agent responsible for the preparation in which one of the instant Defendants was or is the servicer or sub-servicer of the mortgage loans, they have been responsible for the preparation of the necessary documents, including an Assignment of Mortgage assigning the mortgage from MERS to the trustee.  In some cases MERS gives (or believes themselves able to give) servicers and sub-servicers the authority to execute Assignments of Mortgages from MERS to the trustee.  However, MERS never authorizes servicers or sub-servicers to execute an Assignment of Mortgage that includes an assignment of a note, and, in fact, cannot, as they never claim, much less possess, custody or ownership of the Note.

45

In spite of this lack of authority, the Defendant servicers herein have caused

Assignments of Mortgage to be prepared and executed by their agents that improperly

purport to assign the note from MERS to the trustee and falsely claim that the servicer

employee executing the Assignment has authority to assign the note on behalf of MERS.

In doing so, the Defendant servicers have executed many such improper and false

Assignments that have been filed in Oregon foreclosure cases that have the purpose of

trying to deceive the borrower and courts as to who is the note holder.

## 12. GMAC Mortgage Signed and Filed False Affidavits in 2006

In the recent case filed against GMAC by the Attorney General of the State of

Ohio, it is noted that in May of 2006, the Circuit Court of the Fourth Judicial Circuit in

and for Duvall County Florida sanctioned the plaintiff in a mortgage foreclosure case (the

"Florida Foreclosure Decision") because an employee of GMAC Mortgage Corporation

(a predecessor of GMAC Mortgage) had signed a false affidavit on behalf of the plaintiff.

The court said, "Plaintiff, through it servicing entity, GMAC Mortgage Corporation,

submitted false testimony to the Court in the form of Affidavits of Indebtedness signed

and subscribed by a ...'Limited Signing Officer' with GMAC Mortgage

Corporation...[who] would attest to review of the relevant loan documents...when in

fact...she neither reviewed the referenced records nor was familiar with the manner in

which the records were created by GMAC on behalf of Plaintiff...none of the Affidavits

were signed before a Notary." (see attached **Exhibit D**). The court sanctioned plaintiff

in the Florida Foreclosure Decision and ordered GMAC Mortgage Corporation to provide

a written confirmation that "affidavits filed in future foreclosure actions in Florida accurately memorialize the actions and conduct of the affiants."

**13.GMAC Mortgage Continued to File False Affidavits in 2009 and 2010**

Stephan has been a team leader in the foreclosure department of GMAC Mortgage for years, including through at least August 2, 2010. Stephan has been an employee of GMAC Mortgage, or affiliates, for approximately 5 years.

In a December 10, 2009 deposition (the "2009 Deposition") in a Florida state court foreclosure case (the "2009 Florida Case"), Stephan testified that his team brought to him approximately 10,000 affidavits and assignments in a month for him to sign (2009 Deposition, p.7, ls 18-20).

In spite of the Florida Foreclosure Decision, Stephan testified that he did not sign the affidavits based on his personal knowledge and that he relied on others (2009 Deposition, p. 10, ls 6-15). However, he also testified that his team did not verify the accuracy of the information: "They do not go into the system and verify the information as accurate. We are relying on our attorney network to ensure that they are asking for the correct information." (2009 Deposition, pp. 12-13, ls 16-25 and 1-4). Stephan knew or should have known that these hundreds of affidavits would be filed in Ohio courts and relied upon by Ohio Common Pleas Judges in deciding whether the plaintiff in the particular case had a right to foreclose on Ohio residents.

When Stephan executed an affidavit, he testified he did not ascertain who the current promissory note-holder was (2009 Deposition, p. 31, ls. 12-14), even though his affidavits always stated or implied that plaintiff was the holder of the note. The agents of

GMAC Mortgage prepared these affidavits to mislead the courts in Ohio on such matters as who kept the applicable records, who the holder of the note was, the amount due to whoever the holder of the note was, and whether proper notice alleging default had been sent to the borrower.

In spite of his lack of personal knowledge, Stephan swore in the hundreds of affidavits he signed for Ohio courts that "I have personal knowledge of the facts contained in this affidavit," or equivalent words (see as examples **Exhibits A** and **B**). Stephan signed hundreds of these false affidavits, and Defendants caused hundreds of these false affidavits to be filed in hundreds of mortgage foreclosure cases in Ohio.

Stephan – claiming to be an officer of MERS – signed for many Ohio foreclosure cases Assignments of Mortgage falsely claiming that he assigned a borrower's mortgage and note from MERS to the plaintiff (see attached **Exhibit C**), even though he did not have the authority of MERS to assign a note to any party.

Stephan signed hundreds of affidavits outside of the presence of a notary public (2009 Deposition, p. 13, ls. 10-17) that were filed in Ohio foreclosure cases.

Stephan was acting within the scope of his employment with GMAC Mortgage when he executed the false affidavits, when he executed the affidavits outside the presence of notaries public and when he execute the false assignments of note from MERS to plaintiffs in Ohio mortgage foreclosure cases.

Ally and GMAC Mortgage had authority over the right to control the actions of Stephan and benefited financially from the actions of Stephan. The actions of Stephan were part of the business plans of Ally and GMAC Mortgage.

48

GMAC Mortgage has outsourced various pieces of the foreclosure process. For instance, GMAC Mortgage contracts with Fiserv, Inc. ("Fiserv") to provide such computer services as recording payments received from, and amounts allegedly due, lenders. Fiserv advertises that it is a "leading global provider of information management and electronic commerce services" which provides "solutions for optimizing all aspects of the payments mix to help create efficiency and growth."

GMAC Mortgage employees executed thousands of false affidavits and purported to enter payments, failures to pay, and other information in computers for the Fiserv system.

It is Fiserv that creates and maintains the records and calculates the amounts allegedly due from borrowers.

In a June 7, 2010 deposition (the "2010 Deposition") in a Maine mortgage foreclosure case (the "Maine Mortgage Foreclosure Case"), Stephan testified that he did not have "any knowledge about how GMAC ensures the accuracy of the data entered into the system" (2010 Deposition, p. 30, ls. 10-13).

Lender Processing Services, Inc. ("LPS") provides a separate system that creates documents for GMAC Mortgage in the foreclosure process and acts as an intermediary between attorneys for GMAC Mortgage and GMAC Mortgage in the foreclosure process (2010 Deposition, pp. 35-42 and 56-57).

As part of GMAC Mortgage policy, Stephan did not read every paragraph of the summary judgment affidavits he signed (2010 Deposition, pp.61-64) that were prepared by LPS. The summary judgment affidavits signed by Stephan contained inaccuracies.

49

GMAC Mortgage knew or should have known that failure to supervise the accuracy of the input of information into, maintenance of information in, and calculations provided by, the outsourced computer systems and document preparation would lead to errors and inaccuracies that would violate GMAC Mortgage's duty to consumers to accurately account for payments received by consumers and payments owed by consumers.

GMAC Mortgage and Ally learned of the 2009 Deposition soon after that deposition, but took no corrective action.

During the 2010 Deposition, Stephan testified: (a) he signed the affidavits outside of the presence of a notary (p. 56, ls. 10-28); (b) when he signed a summary judgment affidavit he did "not inspect any exhibits attached to it" (p. 54, ls. 12-25); (c) he did no read every paragraph of the summary judgment affidavits he signed (p. 60, ls. 24-25 and p. 62, ls. 1-3); and (d) the process he followed "in signing summary judgment affidavits is in accordance with the policies and procedures require of you by GMAC Mortgage." (p. 64, ls. 8-14).

GMAC Mortgage and Ally learned of the 2010 Deposition in June, 2010.

**Sanctions in Maine in 2010**

The Defendant in the Maine Mortgage Foreclosure moved for sanctions for a false affidavit signed by Stephan and relied upon by the court in granting summary judgment for plaintiff. The Maine court held oral argument on the motion on September 1, 2010.

On September 24, the Maine court vacated the grant of summary judgment and also addressed the motion for a protective order that had been filed that would have

prohibited the dissemination of the deposition of Stephan taken in the case. The Maine

court said that "Plaintiff points to the embarrassment of GMAC and its employees have

suffered, and will continue to suffer, from the posting of excerpts from Stephan's

deposition transcript on an Internet blog." (p.3 of **Exhibit E**) The Maine court denied the

motion for protective order, noting "Stephan's deposition was taken to advance a

legitimate purpose…"

The Maine court then granted the motion for sanctions filed by the borrower,

awarding to the borrower the borrower's attorneys fees: "Rather than being an isolated or

inadvertent instance of misconduct, the Court finds that GMAC has persisted in its

unlawful document signing practices long after and even in the face of the Florida

Court's order, and that such conduct constitutes 'bad faith' under Rule 56(g). These

documents are submitted to a court with the intent that the court find a homeowner liable

to the plaintiff for thousands of dollars and subject to foreclosure on the debtor's

residence. Filing such a document without significant regard for its accuracy, which the

court in ordinary circumstances may never be able to investigate or otherwise verify, is a

serious and troubling matter."

Since the oral argument in the Maine mortgage foreclosure case was held on

September 1, 2010, GMAC Mortgage knew after September 1 that sanctions were

imminent.

On September 17, 2010, Ally sent a memo to "GMAC Preferred Agents" directing

these agents that GMAC Mortgage "may need to take corrective action in connection

with some foreclosures" in 23 states, including Ohio. In addition, for these states,

including Ohio, it directed the agents: (a) "Evictions: Do not proceed with evictions, cash for keys transactions, or lockouts. All files should be placed on hold, regardless of occupant type. (b) REO Closings: Do not proceed with REO sale closings."

In spite of his admissions in his depositions, Jeffrey Stephan is still employed by GMAC Mortgage, reflecting the fact that his actions were in accordance with GMAC Mortgage policy.

In light of the actions of Ally, GMAC and Stephan, the Attorney General of Ohio has reasonable cause to believe that GMAC employees in addition to Stephan have signed false affidavits, assignments of notes and other documents in connection with foreclosure cases.

On September 27, 2010 the Ohio Attorney General sent a letter to the General Counsel of Ally expressing concerns over GMAC Mortgage's actions and requested that Ally/GMAC Mortgage describe the steps being taken to remedy the problems identified, the steps to alert Ohio courts of the problems, including cases that had already proceeded to a foreclosure judgment, and the actions to ensure that the problems related to its foreclosure affidavits not re-occur in the future. On September 30, Plaintiff requested that Ally/GMAC Mortgage agree not to proceed towards a judgment, sale, eviction, or transfer of any property until there was agreement that proper remedial action had been taken.

GMAC Mortgage and Ally claim that they will review the affidavits signed by Stephan and other GMAC Mortgage employees since July of 2009, but not affidavits signed before July of 2009. They have not yet reviewed the majority of the affidavits

52

signed by Stephan or other GMAC Mortgage employees.  Ally/GMAC Mortgage said they would review all the affidavits by the end of October, 2010, but did not indicate they would review any Assignments executed by Stephan, even though they were improperly prepared and executed.

Ally/GMAC Mortgage said they would substitute new affidavits for improper affidavits, without any assurance of which affidavits they would consider improper and while still asserting they would rely on their outsourced system for the calculation of amounts allegedly due.  Ally/GMAC Mortgage has not yet explained how it planned to determine from its review of outsourced computer records who the holder of the note and mortgage was in any particular case, which of necessity must involve a review of the actual note, mortgage and any assignments or endorsements.

CO212-r013009/NEJ



EMC
*Mortgage Corporation*

July 29, 2009                    Re: EMC Loan Number:    0014366413


Elmer V Dunham
4110 SE Hawthorne Blvd #266
Portland, OR 97214


Ref:   Property Address:   15268 Penny Ave
                           Sandy OR 97055

Dear Elmer V Dunham :

This agreement is entered into between EMC Mortgage Corporation
(EMC), servicer, and Elmer V Dunham, borrower(s),
for the delinquent amount due.

This account is due for December 01, 2008 through July 01, 2009
mortgage payments and fees.

The total amount past due as of the date of this agreement
is $ 7691.21*.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|----------|--------|------|----------|--------|
| 01 | 07/31/09 | 700.00 | 02 | 08/15/09 | 678.73 |
| 03 | 09/15/09 | 678.73 | 04 | 10/15/09 | 678.73 |
| 05 | 11/15/09 | 678.73 | 06 | 12/15/09 | 678.73 |


*This is not the amount required to pay your loan in full.  To
request a payoff quote, you may either call our customer service
line at (800) 723-3004 or visit our website at
www.emcmortgageservicing.com.





**EMC**
*Mortgage Corporation*

Page 2
0014366413/CO212/NEJ

The payments indicated above may fluctuate due to escrow, interest, or other adjustments allowed by the Note and Security Instrument.

There will be no grace period.  Payments must be applied to the account by the due dates specified above.

If this repayment agreement is broken due to payments not being received as specified, EMC can exercise its rights to accept only the total amount due on the account.

The total amount due under this agreement may be paid in full at any time.

The filing of a petition in bankruptcy will immediately terminate this agreement.

If you agree with the terms and conditions of this contract, please sign and return this contract to the address listed below.

If this signed agreement is not received by EMC prior to the due date of the first forbearance payment, this agreement will expire and normal collection procedures will resume.

Sincerely,

Collections Department
1-888-609-2379

Borrower _____    Date _____

Borrower _____    Date _____

NOTICE: EMC is attempting to collect a debt and any information obtained will be used for that purpose.



## MORTGAGE RECONSTRUCTION ASSOCIATES

4110 SE Hawthorne blvd, # 266
Portland, Oregon 97214
Tel: 503-847-6360
Email: mortgagerecon@gmail.com

November 17, 2010

TO: EMC Mortgage
Attn: Legal Department
800 State Highway 121 Bypass
Lewisville, Texas 75067-4180

Mailing Address:
PO Box 293150
Lewisville, Texas 75029-3150

cc: John Manning, Attorney at Law

Loan #: **0014366413**
Property Address: 15268 Penny Avenue, Sandy, Oregon
Borrower: Dunham, Elmer V.

TO: EMC Mortgage, and their attorneys:

On September 5, 2008, we initiated a loan modification request with your company. After numerous telephone calls and our repetitive submissions of documents to EMC, you prepared an Agreement dated July 29, 2009 (copy attached) which specified a single payment of $700.00 due on July 31, 2009, and successive monthly payments of $678.73 per month commencing August 15, 2009.

There was no terminal or sunset date in this Agreement.

WE HAVE COMPLIED WITH THIS AGREEMENT IN EVERY WAY, AND MADE EACH AND EVERY PAYMENT IN ACCORD WITH YOUR SCHEDULE AND THIS AGREEMENT.

Schedule of payments is attached. Every one of these was made via Western Union, per your phone request, until September 2010, from which time they were sent via regular check with verifiable good funds, as you had returned the Western Union payment.

Despite our complete adherence to the Agreement, and your acceptance of all payments up to September 2010, you filed a Notice of Default on May 5, 2010. You have a foreclosure date currently scheduled for January 5, 2011.

Elmer Dunham is 92 years of age. We will inform you candidly that you are not going to take a home away from this elderly person and evict him. We have sent you, repeatedly, all documents you have requested, despite: a) there already being an Agreement extant and in force, fully complied with by the borrower, and b) you having repeatedly received the same, and requested the same documents over and over again.

Your notice is statutorily defective. Moreover, your agent, Quality Loan Service Corp of Washington, has been specifically informed on October 13, 2010 (copy attached) by the State of Washington

Attorney General Rob McKenna, that they are to cease all attempts to foreclose on properties where the ownership of the note has not been fully evidenced, which you have abjectly failed to do.

Despite there already being an Agreement in force and in effect, we are going to make a one-time offer to tender a large cash paydown of this loan, with the concurrent and permanent, clear recital of loan modified terms, as follows:

On or before December 15, 2010:

A cash paydown in the amount of $14,000.00

The loan recast at the then-correct balance, with monthly payments to commence January 15, 2011 at the rate of 4.0% interest per annum, monthly interest-only payments.

Term: 5 years

At due date, if Mr. Dunham is yet alive (he will be 97), the loan would extend annually until his passing away.

Recission of Notice of Default:  The Notice of Default, and the foreclosure currently calendared for January 5, 2010, will be withdrawn and cancelled.

There can be no further attempts on the part of EMC to repeatedly request documents, or enter into agreements and then dishonor the same.

If the above revisions, or a reasonable negotiated permutation of the same is not concluded and committed to writing and signed by November 30, 2010, we will commence every legal remedy and recourse against EMC Mortgage, Quality Loan Service Corp., as well as the actual owners of this note, which will be uncovered in discovery, including civil court action, injunction, damages and petition for criminal prosecution of these companies and their primary officers by the Department of Justice in both Oregon and Washington.

No further dalliance will be tolerated.


Chuck Barker (authorization is in EMC file)          Janice Murdoch
Mortgage Reconstruction Associates                   Daughter of Elmer V. Dunham
mortgagerecon@gmail.com                              Attorney-In-Fact for Elmer V. Dunham

Tel: 503-847-6360   Fax: 866-297-1922


cc: Oregon Attorney General John Kroger, Department of Justice

    Washington Attorney General Rob McKenna, Department of Justice

# MORTGAGE RECONSTRUCTION ASSOCIATES
**4110 SE Hawthorne Blvd, # 266**
**Portland, Oregon 97214**
**Tel: 503-847-6360**

November 26, 2010

TO: EMC Mortgage
Attn: Legal Department
800 State Highway 121 Bypass
Lewisville, Texas 75067-4180

And Mailing Address:
PO Box 293150
Lewisville, Texas 75029-3150
And Via Fax to: 1-866-282-5682 and 1-877-601-2677

Loan #: **0014366413**
Property Address: 15268 Penny Avenue, Sandy, Oregon
Borrower: Dunham, Elmer V.

### RE: RESPA Sec 6 Qualified Written Request and Complaint to HUD

### ** UPDATED WITH ADDITIONAL DOCUMENTS REQUESTESD IN PARAGRAPH (3) BELOW **

TO: EMC Mortgage, and their attorneys:

### This is a "Qualified Written Request" under 12 USC Section 2605 of the Real Estate Settlement Procedures Act (RESPA).

I am writing to request:

(1) Copies of all documents pertaining to the origination of the above referenced mortgage including the Note, Trust Deed, adjustable rate addendum(s), Truth in Lending statements, Good Faith Estimate (GFE), HUD 1, appraisal, and all required disclosures associated with this transaction for the above referenced loan. The copies should be legible and all documents shall be copied in their entirety, and must be the executed copies of all documents requiring signature.

(2) A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan from its origination.

(3) We have reasons to believe that the subject loan is not owned by EMC Mortgage. EMC may not have been the originating lender or owner of the subject loan.

Consequently, it is hereby demanded that each and every document evidencing any chain of ownership of the subject Note instrument, the Trust Deed relating thereto, the amount paid for the purchase of the note and supporting evidence as will verify that amount paid, and all other documents be furnished, together with signature on all documents requiring execution, and identification and contact information for all custodians, and prior custodians, of these documents.

(4) The disclosure, identity, location and contact information for the present custodian, as of the date of this writing, of the ORIGINAL, INK-SIGNED documents pertaining to the subject loan.

As you are aware, these documents have been previously requested, but never furnished by EMC. As of this writing, the documents have not been provided. This letter is now a formal request, under RESPA Section 2605. Consequently, concurrently with this letter, a formal complaint has been submitted to:

Director, Office of RESPA and Interstate Sales
US Department of Housing and Urban Development
Room 9154
451 7th Street, SW
Washington, DC 20410

Michelle M. Letney
Enforcement Officer
Financial Fraud/Consumer Protection Section
Oregon Department of Justice

1162 Court Street NE
Salem, Oregon 973012-4096

michelle.m.letney@doj.state.or.us
katie.a.west@doj.state.or.us

John Manning, Attorney at Law
Attorney for Mortgage Reconstruction Associates

Rob McKenna
Attorney General
State of Washington
1125 Washington Street SE

PO Box 40100
Olympia, Washington 98504-0100

John Kroger
Attorney General
State of Oregon
1162 Court Street NE
Salem, Oregon 97031-4096

Most Sincerely,

Chuck Barker
Mortgage Reconstruction Associates
mortgagerecon@gmail.com
Tel: 503-847-6360

Authorization Attached

Relevant Code Section:

12 USC Section 2605 of the Real Estate Settlement Procedures Act (RESPA)

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

## MORTGAGE RECONSTRUCTION ASSOCIATES

4110 SE Hawthorne blvd, # 266
Portland, Oregon 97214
Tel: 503-847-6360
Email: mortgagerecon@gmail.com

November 27, 2010

Michelle M. Letney
Enforcement Officer
Financial Fraud/Consumer Protection Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 973012-4096

Rob McKenna
Attorney General
State of Washington
1125 Washington Street SE
PO Box 40100
Olympia, Washington 98504-0100

michelle.m.letney@doj.state.or.us
katie.a.west@doj.state.or.us

John Kroger
Attorney General
State of Oregon
1162 Court Street NE
Salem, Oregon 97031-4096

John Manning, Attorney at Law
Attorney for Mortgage Reconstruction Associates

RE: Loan **#: 0014366413**
Property Address: 15268 Penny Avenue, Sandy, Oregon 97055
Original Borrower: Dunham, Elmer V.

### REQUEST FOR DEPARTMENT OF JUSTICE
### AND
### ATTORNEY GENERAL'S OFFICE INVESTIGATION

Dear Mr. McKenna, Mr. Kroger, Ms. Letney and Ms. West:

This letter concerns Quality Loan Services of Washington. (hereinafter, "Quality"), EMC Mortgage (hereinafter, "EMC"), JP Morgan Chase Bank (hereinafter "JPMC"), and LSI Title Company (hereinafter "LSI"). Copies of documents are enclosed herewith for your reference (and please be aware there are volumes more than were practical to send with this initial correspondence).

The letter, and all previous correspondence from EMC, Quality and LSI are plainly indicative of the continuing propensity of these colluding parties to attempt to both secret the true circumstances and ownership of this loan, to circumvent production of documents as required under RESPA and under and to continue to pursue non-judicial foreclosures in clear and flagrant violation of the laws of the states of both Washington and Oregon.

Consequently, this letter is my formal request for your intervention, prosecution of EMC, Quality and LSI, as well as EMC parent corporation JPMC, and their respective officers and directors, for willful and intentional violation of state laws, constituting criminal behavior.

I will address sixteen enumerated requests for information, and then cite the specific code sections of which they are in clear violation, where these are known.

First, and generally, RESPA does not contain any limiting or restricting recitals which state that the loan servicer is not responsible for all documents of the entire loan history, regardless of who may have been the original loan servicer or originator. Indeed, a) the only documents EMC or Quality have ever furnished are, in fact, copies of some documents from the loan originator (Chevy Chase Bank), and b) it is an essential

foundation of our complaint that that it is these very alleged transfers and assignments of this loan that are at issue.

1. Both Quality and EMC have steadfastly failed to produce any documentary evidence as to who is the owner of this note. They maintain an arrogance so profound that they believe it suffices that they merely state "xyz is the owner of the loan". By the same token, I could blandly state: "there is no obligation to any lender on this property, and insist the Trust Deed be reconveyed", but I will not make such a false statement, and I would not expect your Department or any court to accept my statement absent my providing complete documentary evidence of my claim..

2. Quality, LSI and EMC claim that providing proof of ownership is "overly broad and unduly burdensome, or considered privileged and proprietary information". This is abjectly unacceptable, and must be rejected by the Oregon Department of Justice, and the respective attorneys general. Not only would any court or reasonable person reject this argument, but it is clear that Washington, Oregon and United States law requires that a party claiming to be an owner of a mortgage instrument must prove they are the rightful owner. This can only be done by a) complete documented evidence of any and all chains of ownership transfers and assignments and b) production of the ORIGINAL note.

   Absent these, there could be multiple claimants, with conflicting or claims of ownerships that have not been perfected, and no person, court or criminal law enforcement agency could begin to ascertain whether a claim of ownership is true or false.

3. Quality, LSI and EMC claim that providing proof of any alleged transfers or assignments are "overly broad and unduly burdensome, or considered privileged and proprietary information". This is clearly in contravention and violation of Oregon law, to wit:

   **ORS 86.060 Assignment of mortgage.** Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.

   Thus, all attempts to transfer or assign the mortgage, as has been attempted by MERS, are **statutorily defective**, as this section clearly recites the requirement of the same formality as required in deeds and mortgages, and recorded in the records of mortgages of the county where the land is situated. These notes are therefore still owned by the original mortgage beneficiary (Wealthbridge Mortgage), which is the ONLY party that has authority to conduct any foreclosure proceeding.

   **ORS 86.735 Foreclosure by advertisement and sale.** The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:
   (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated;

   This further supports and reiterates 86.060. Non-judicial foreclosure is ONLY allowed if any assignments were recorded in the mortgage records of the county, which were not done by Wells, to Wells, or to any other known or unknown party or purported subsequent assignees. All MERS assignments and transfers are therefore statutorily defective.

4. EMC claims that providing proof of what they or any other purported owner paid for this note is "overly broad and unduly burdensome, or considered privileged and proprietary information". EMC is owned by JPMC, a recipient of Federal TARP (Troubles Asset Relief Program) funds provided by the taxpayers

of the Unites States, and is thus subject to full public disclosure of their assets. Moreover, there are windfall profit abuses present in the subject circumstances, with the actual owner of the note (whomever that may be) attempting to illegally foreclose, wrest the asset away from the borrower, cause the borrower to suffer the loss of all of their downpayment funds and all monies invested in capital improvements, thus be able to declare and quantify the "loss", and recover money (that is, taxpayer money) from the FDIC based on the *face value* of the original note, irrespective of what they actually paid for it. This, of course, is why the lenders fiercely persist in failing to turn over evidentiary documents, pretend they don't have them, produce only copies of the note and Trust Deed, but not the *ownership, transfer or amount paid* documents. This egregious situation cannot be allowed to be continued and perpetrated by EMC, JPMC and Quality, and those amounts paid, checks, wire transfers, and all evidences of payments, whether for the individual note or whether as a part of an aggregate sale, must be produced.

5.  The telephone numbers provided by EMC, Quality and LSI (619-645-7711, 866-645-7711, 714-573-1965 and 800-695-7695) ring to a generic call centers (or recorded messages with no ability to reach a live person), and not a specific person who is authorized and capable of actually negotiating and modifying a loan, which is in direct violation of Oregon law, as SB 628 was passed and rendered effective June 30, 2009. Furthermore, it is now questionable whether EMC, JPMC, or some other unknown party is even the owner of this loan, as set forth in #1 above, or just another servicer in the chain.

6.  I request that the language contained in the Trust Deed on which Quality and EMC are attempting to conduct a foreclosure sale be carefully read: "MERS acts solely as the nominee for the Lender's successors and assigns. MERS is the beneficiary under the Security Instrument" (Deed of Trust). It is an irreconcilable conundrum that MERS cannot be two very different things at once: a "nominee" for the Lender and simultaneously the "beneficiary".

    Furthermore, EMC and Quality have assiduously avoided answering the simple, direct and relevant questions asked of them:

    Explain in complete and explicit detail
    a)  how MERS can be simultaneously "acting as a nominee" and "the beneficiary" at the same time,
    b)  how they intended to have these clearly different descriptions  understood by a borrower signing these documents, and
    c)  how it is that MERS is the beneficiary under the security instrument, yet is not the beneficiary under the Note.

    These are crucial to the determination of the standing of any party to claim any interest in the subject Note and/or the Trust Deed, and these questions must be answered by EMC and Quality.

7.  EMC and Quality maintain that the title to the loan is held under MERS and continues to be for the life of the loan, and that by supposedly recording title under MERS, it eliminates the need for assignments at the time of servicing transfers.  Are these folks truly so arrogant that they believe their recital somehow makes this true?  Are they also able to ignore and re-write law to suit their own interests and purposes?  They can embezzle customer's money if it makes their balance statements more positive?  They can also inflate their actual operating expenses so they don't have to pay so much corporate income tax?

    **86.060 Assignment of mortgage.** Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.

    **86.735 Foreclosure by advertisement and sale.** The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:

(1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated;

All MERS assignments and transfers are therefore statutorily defective.

Both EMC, their parent company JPMC and Quality have intentionally and purposefully ignored both Oregon and Washington law to suit their own purposes and to unjustly enrich themselves. They must be properly remonstrated, and this borrower and the public must be compensated for EMC, JPMC and Quality's egregious and blatant wanton disregard for the laws of these states.

8. EMC and Quality's continued refusal to produce any documentary evidencing of the chain of title and actual ownership of the loan is concealment and obstruction of justice, which potentially warrants criminal prosecution.

9. EMC provides no answers to the inexplicable dichotomy of EMC representing that they are only a "servicer", yet they provide no documentary evidencing of the same, and simultaneously act, or pretend to behave as the actual owner of the loan. When pressed on this, they claim such information is "overly broad and unduly burdensome, or considered privileged and proprietary information".

10. Quality maintains that that they have "validated the debt". This is a statement so profoundly untrue that it constitutes perjury on the part of NW. They have not only failed abjectly to "validate" an debt, but they have failed to even prove that they, or any party to their conspiracy, have any standing whatsoever to claim any knowledge of any debt, much less o wrest property away from the borrower.

11. In the special case of EMC, there transpired an egregious instance of bad faith and intentional attempts to mislead the borrower with a written repayment agreement, including recital of affordable monthly payments, and upon which the borrower reasonably relied; this letter dated July 29, 2009, and the record of payments made in accord with that payment agreement, are attached as exhibits hereto. EMC purposefully and willfully attempted to trick the Plaintiff borrower, by setting out and entering into this written payment agreement (which had no termination or sunset date), the borrower having complied with each and every such payment in precise accord with the schedule as set forth by EMC, and then suddenly, and without good cause, EMC abrogated their own agreement, suddenly deeming there then to be no payment agreement in place.

12. The Trustee's Notice of Sale describes a confusing recital and supposed assignment of parties, yet produces no evidence of either authority to do so, nor any documents which support that any such assignment is valid or ever even may have transpired. The first paragraph Notice of Sale states:

"Reference is made to…First American Title, as trustee…in favor of MERS, as nominee for Greenpoint Mortgage Funding , as beneficiary... However, not one of these parties is a party to the "Notice of Trustee's Sale". LSI Title claims to be the trustee, Greenpoint is nowhere to be found, Quality Loan Service of Washington (but, inexplicably, operating from a San Diego, California address attempting to conduct Oregon foreclosures) appears from nowhere and apparently claims to be involved.

The Notice goes on to state "Both the beneficiary and the trustee have elected to sell the said real property…" Who is the beneficiary? By what authority do they claim to have become the beneficiary?

13. And on what basis is any "default" claimed? - the borrower continued to make monthly payments each and every month, in accord with the payments as specified by the party who had purported authority to make that payment agreement (EMC), and the borrower has continued to make these monthly payments, to and including September 2010, when EMC simply started rejecting those payments (all sent by

Western Union, per EMC's request), and in the two succeeding months have tendered payment via regular bank draft, to and including November, 2010.

14. Correspondence and records of telephonic conversations between EMC, Quality, LSI and JPMC were not between EMC s and their attorney, and they are therefore not protected by attorney-client privilege. They are likely to contain information which is relevant and germane to the subject loan and attempted foreclosure, and must be produced.

15. Questions were asked with respect to disposition of funds tendered to EMC as interest payments, and as to why these were not posted as such. The only reply received was a printout of the payment history, which includes entries and balances inconsistent with all calculations of possible interest, principal, and correct account postings.

16. EMC, Quality and LSI have failed to provide disclosure, identity, location and contact information for the present custodian, as of the date of this writing, of the ORIGINAL, INK-SIGNED documents pertaining to the subject loan. Instead, they claim this to be ""overly broad and unduly burdensome, or considered privileged and proprietary information". Based upon the limited information available, it appears that EMC is not the actual owner of the loan.

**Who holds the original loan documents, and where are they?**

Federal Circuit Courts have ruled that the only way to prove the perfection of any security [including promissory note] is by actual possession of the security. Current or prior possession must be proved up.

Where the complaining party cannot prove the existence of the note, then there is no note.
*See Pacific Concrete F.C.U. V. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001).

Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory. *See Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977).* "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bankruptcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession.

I called all of the telephone numbers provided by EMC, Quality and LSI (619-645-7711, 866-645-7711, 714-573-1965 and 800-695-7695). I asked to be connected with the custodian of the loan documents for loan # 0014366413. I was informed that they do not have the requested loan documents at that office, and that they were unable to tell me where I could find them.

Not only must the whereabouts and contact information, as of this date, of the ORIGINAL, INK-SIGNED documents pertaining to the subject loan be provided, they must be **produced.**

Based upon the foregoing attempts by EMC Mortgage, Quality Loan Servicing of Washington and LSI Title Company to avoid production, conceal, obstruct justice, and the perjuries committed, I request that the State of Oregon, Department of Justice, and the attorneys general of Washington and Oregon to do the following:

1. Require immediate production of all documents as set forth above.

2. Commence a full investigation into all matters of the subject loan documentation, transferring, assignments, ownership, amounts paid, recordations and compliance with state laws.

3. That an order issue from the Oregon Department of Justice, and from the Office of the Attorney General of the State of Washington and the Office of the Attorney General of the State of Oregon enjoining and restraining both EMC Mortgage, Quality Loan Servicing of Washington and LSI Title Company from continuing with any foreclosure currently being attempted, as irrepairable harm will be suffered by the borrowers and to the taxpayers of the United States and to the public at large and, with no legal forum is available to the borrowers in a non-judicial "notice" type of foreclosure, and the remedy of the courts is not affordable by them..

Most Sincerely,

Chuck Barker
Mortgage Reconstruction Associates
mortgagerecon@gmail.com
Tel: 503-847-6360