UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-42021-elp7 |
| **ELMER VINTON DUNHAM,** | |
| Debtor | |
| and | |
| Wells Fargo Bank, | **DEBTOR'S** |
| Wells Fargo Mortgage, | **SUPPLEMENTAL RESPONSE TO** |
| Mortgage Electronic Registration Systems, Inc (aka "MERS"), | **WELLS FARGO MOTION FOR RELIEF FROM AUTOMATIC STAY** |
| Quality Loan Service Corp of Washington, | |
| EMC Mortgage, | |
| JP Morgan Chase Bank, | |
| LSI Title Company | |
| Creditors | |

## INTRODUCTION

1.  Wells Fargo Bank and Wells Fargo Mortgage ("Wells"), Mortgage Electronic Registration Services, Inc. ("MERS"), Quality Loan Service Corporation of Washington ("Quality"), EMC Mortgage ("EMC"), JP Morgan Chase Bank

1

("JPMC"), LSI Tile Company ("LSI"), And DOES 1-50, together and collectively referred to as "Creditors and/or Movants", have committed multiple and complex frauds and unfair, deceptive and unconscionable acts and practices upon the Debtor, causing egregious harm and financial losses upon the Debtor, for the sole purpose of the Creditors own enrichment. The Creditors have used and abused the non-judicial foreclosure processes, purposefully avoiding any reasonable forum for the Debtor-Borrower to object and to raise defenses to illegitimate foreclosure actions and processes, falsified documents, obstructed and caused miscarriages of justice by intentionally failing to produce documents as would evidence their ownership of any Notes or Trust Deeds, intentionally and purposefully complicated, delayed and prevented any attempts by the Debtor to reasonably modify the loans to reflect financial and real estate markets and conditions of the economy, attempted to wrest all of the Debtor's down payment funds and capital improvement investments away from Debtor without just compensation, attempted to unlawfully eject legitimate residents of the homes which are the collateral security for the note instruments at question, used falsified, incomplete and inadequate documents to attempt to improperly take homes away from the Debtor, sought to inequitably and unjustly enrich themselves to the extreme prejudice and detriment of the Debtor, and to benefit from and to unjustly enrich themselves at the expense of the taxpayers of the United States of America by foreclosing on properties, then turning and collecting windfall profits via Federal Deposit Insurance Corporation (FDIC)

programs which reimburse lenders based upon the face value of real estate loans. The Creditors have violated the laws of the State of Oregon, the State of Washington and of the United States of America. The inequity and egregious misconduct on the part of the Creditors must be arrested and rectified. The above actions of Creditors now aggregate to a clear conspiring and collusion by the Creditors to take money and properties from Oregon property owners by illegal foreclosure practices. Absent the relief prayed for herein by the Debtor, irreparable harm will be inflicted upon and suffered by the Debtor.

## PARTIES

2. The Debtor Elmer Vinton Dunham is 92 years of age, legally blind, hard of hearing (with dual hearing aids), a veteran of three wars (World War II, Korea and Vietnam), and lives on limited social security income. He has only two assets left, the subject single family residence, and a small rental condominium, which are the sole residual assets from the rental business work of his spouse of 58 years, Mary Ruth Dunham, who passed away in September of 2009 from Alzheimer's Disease.

3. Creditor Wells is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified

owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

4. Creditor EMC is a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

5. Creditor JPMC is alleged or believed to be a company that acts, or pretends to act, variously as a) owner of the Note, or b) as a servicer for trusts acting for investors in securitized transactions, or other partially disclosed, unknown, undisclosed or unidentified owners or purported owners of the Notes and/or Trust Deeds in the subject matters.

6. Quality is a foreclosure processing company that is actively attempting to conduct a foreclosure and trustees auction of the residential property located at 15268 Penny Avenue, Sandy, Oregon, without having proven ownership of the Note or Trust Deed, relying on falsified, incomplete, non-existent and/or intentionally hidden documents, and in violation of state laws and due process.

7. LSI is a company registered as a "title company" which appears in some capacity in the subject matters, purporting to transfer interests or to act as a conveying entity, their actual role as yet indeterminate.

8. Creditor MERS is, by their own documents, described variously and in a contradictory manner both "SOLELY AS NOMINEE", yet also as "possessing

4

only legal title" to all Trust Deeds referenced herein, but not as nominee, beneficiary or trustee or any other capacity for any of the Notes which recite the terms of the financial relationships between the parties.

## JURISDICTION AND VENUE

9. The actions of Creditors, hereinafter described, have occurred in the in the State of Oregon, in the county of Clackamas, and are in violation of the Laws of the State of Oregon and Laws of the United States, and the common law. The Debtor, Elmer Vinton Dunham, does not have the financial resources to retain counsel to defend against the egregious acts committed upon him by the Creditors herein, and thus cannot afford to file a case in the County, State or Federal civil court systems, and therefore has no other forum in which to raise the substantive issues surrounding the actions and behaviors of the Creditors herein other than this United States Bankruptcy Court. The Creditors have intentionally used, and abused, the non-judicial foreclosure process, as well as their overwhelming superiority of monetary and attorney representation resources to unfairly and prejudicially avoid the Debtor-borrower having access to a reasonable forum in which to object and raise the issues and defenses to their actions.

10. Jurisdiction over the subject matter of this action lies with this Court pursuant to United States Bankruptcy Code, and ORS Title 9, Chapter 86, sections 86.010 to 86.795 and the common law.

11. This court has venue to hear this case pursuant to the United States Bankruptcy Court, District of Oregon, Portland Division, and Oregon ORS Title 9, Chapter 86, sections 86.010 to 86.795 – in that the Creditors conducted activity which gave rise to the claims for relief in Clackamas County, in the State of Oregon, and the Debtor resides in Portland, Oregon.

## STATEMENT OF FACTS

1. In the case of 15268 Penny Avenue, Sandy, Oregon (hereinafter, "Penny") mortgage foreclosure case, EMC claimed to be the holder of the promissory note and mortgage that form the basis for their foreclosure action, and has repeatedly and persistently refused to produce any documents whatsoever as would evidence whether they, or any other invisible, unknown, partially known party or group of parties, are the actual owner or real-party-in-interest of the Notes or Trust Deed, claiming instead that these are "privileged", "private", "proprietary" or "confidential" documents.

2. Recently, Wells now purports to have some interest in, or be the owner of, the Note and Trust Deed. However, Wells is nt the true owner of either the subject Note or Trust Deed, is not the real party in interest, and thus has no standing to petition for relief.

    a.) On 4/22/2009, MERS, whose interest is questionable, purports to appoint LSI as Trustee (see attached).

6

      b.) On 1/24/2011, MERS attempts to appoint Wells Fargo as Trustee, itself a blatant and intentional violation of the Section 362 (a) Automatic Stay, from which they, nor any other party, had any relief (see attached).

      c.) MERS purports to assign to Wells as Trustee for not only one, but two, non-extant entities: Bear-Stearns ceased to exist on May 28, 2008, and Greenpoint Mortgage ceased to exist on August 20, 2007.

In all of the above cases, Wells, EMC, JPMC, MERS and even Greenpoint Mortgage and Bear-Stearns, are neither the real party in interest nor the actual owner of the Note. They are but an alleged servicer or sub-servicer for some other or unknown owner, or a trustee holding in a "pool" of hundreds or even thousands of mortgages for investors in certificates claiming ownership interests in the securitized mortgage loans ("the trust").

3. As a servicer for the actual owner or trust, these Creditors are responsible for: collecting payments on the mortgage loans from borrowers and applying them as required by the applicable documents; communicating with the borrowers about insurance and tax payments the borrowers allegedly owe; and reporting all financial activity to the actual owners of the Notes and all applicable tax authorities. They are also responsible for full disclosure under the Real Estate Settlement Procedures Act ("RESPA") of all information, including with the definition of a Qualified Written Request ("QWR").

4. Each Creditor which was known to the Debtor [Note: Wells was heretofore completely unknown and not ever disclosed by any of the Creditors to have

any interest whatsoever in this Note or Trust Deed] has had a RESPA QWR (or multiple follow-up QWR's) served upon them, and each and every Creditor has steadfastly refused to provide any documents whatsoever as would evidence actual ownership of the Note, actual ownership of the Trust Deed, or as would document the alleged transfers of any such ownership.

5. Each Creditor has instead produced only copies of Notes, Trust Deeds and payment histories, but neither original documents nor evidence of any alleged transfers or proving of any current ownership, and instead, claiming these are "privileged", "private", "proprietary" or "confidential" documents.

6. None of the Creditors is the original beneficiary of the subject Note or Trust Deeds [the only original lender known to the Debtor herein was "Chevy Chase Mortgage", a demised entity that may have been absorbed into or purchased by JPMC, and it is not known if the subject Note or Trust deed was included in any such takeover or purchase of Chevy Chase Mortgage Assets, or if the Note and/or Trust Deed had been separately sold to some other party], and all relationships or alleged obligations between the Creditors and the original loan beneficiaries and any subsequent alleged beneficiary has not been proven or demonstrated by any of the Creditors whatsoever.

7. In the special case of EMC, there transpired an egregious instance of bad faith and intentional attempts to mislead the Debtor borrower by providing, after extended and excruciatingly protracted negotiations, to the Debtor a written repayment agreement, including recital of affordable monthly payments, and

upon which the borrower reasonably relied; this letter dated July 29, 2009, and the record of payments made in accord with that payment agreement, are attached as exhibits hereto. EMC purposefully and willfully attempted to trick the Debtor borrower, by setting out and entering into this written payment agreement (which had no termination or sunset date), the borrower having complied with each and every such payment in precise accord with the schedule as set forth by EMC, and then suddenly, and without good cause, EMC dishonored and abrogated their own agreement, suddenly deeming their then to be no payment agreement in place.

## FIRST CAUSE OF ACTION

### Violations of Oregon Revised Statues

1. Plaintiffs incorporate by reference as if completely rewritten herein, the facts and allegations hereinabove set forth.

2. The Creditors, and each of them, have engaged in a pattern and practice of unfair, deceptive, and unconscionable acts in violation of Oregon Revised Code§§86.010 to 86.795 by authorizing and directing the filing of affidavits, assignments and other documents that were false and by proceeding to attempt to foreclosure on properties in spite of the false affidavits, assignments and other documents.

3. The Creditors, and each of them, have engaged in a pattern and practice of unfair, deceptive, and unconscionable acts in violation of Oregon Revised Code §§ 86.010 to 86.795 by conducting their improper and illegal mortgage foreclosure

activities, by benefiting financially from the filing of false affidavits, the filing of incorrect assignments and other documents, and by proceeding with foreclosure proceedings in spite of the affidavits, assignments and other documents that were false, by concealing, hiding, failing to produce, and potentially destroying documents as may evidence ownership or the real parties in interest of the subject Notes and Trust Deeds.

4. The Creditors, and each of them, have intentionally and institutionally established a practice that is in direct violation of ORS **86.060 Assignment of mortgage** and **86.735 Foreclosure by advertisement and sale,** which recite:

"Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.

This practice, which by their own admission is for their own "convenience", has been used by the Creditors, and in particular (but not limited to) MERS, to secret and conceal the true ownership of the very Notes and Trust Deeds which are the purported basis for the Creditors attempting to conduct foreclosure actions against the Debtor and other Oregon citizens.

## SECOND CAUSE OF ACTION

### Common Law Fraud

5. The Debtor incorporates by reference as if completely rewritten herein, the facts and allegations hereinabove set forth.

6. The Creditors, and each of them, and their employees, agents, attorneys, contractors and assignees, have signed affidavits and other documents in these Oregon foreclosure proceedings (a) which contained representations, (b) which were material to the foreclosure proceedings, (c) some of which were made with knowledge of the falsity and others which were made with utter disregard for whether they were true or false, (d) which were made with the intent of misleading the courts and opposing parties into relying upon them, and on which the courts and the opposing parties justifiably relied.

7. The Creditors directed their affiliate companies, and assignees and agents in conducting mortgage foreclosure activities in Oregon, benefiting financially from the filing of false affidavits, assignments and other documents. These were (a) representations made at the direction of Creditors (b) which were material to foreclosure proceedings, (c) which were made with knowledge of their falsity or with utter disregard for whether they were true or false, (d) which were made with the intent of misleading the courts and opposing parties into relying upon them, and I on which the courts and the opposing parties justifiably relied.

8. The Creditors have attempted to conduct foreclosure proceedings outside Court scrutiny in a "notice and sale", also known as a "non-judicial foreclosure" process, intentionally to avoid accountability, and to abort and avoid defenses lawfully available to the party from whom the property is being taken or which attempts are being made to take such property. This is done purposefully and intentionally by the lenders and banks to avoid having to produce proof of Note and Trust Deed

ownership, and to conceal defects in their chain of title and assignments. All of the subject cases are statutorily defective, due to their having failed to comply with the clear specification of not merely one, but two Oregon Statutes:

**86.060 Assignment of mortgage.** Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated.
Thus, all attempts to transfer or assign the mortgage, as has been attempted by MERS, are **statutorily defective**, as this section clearly recites the requirement of <u>the same formality as required in deeds and mortgages, and recorded in the records of morgages of the county where the land is situated.</u> These notes are therefore still owned by the original mortgage beneficiary, which is the ONLY party that has authority to conduct any foreclosure proceeding.

**86.735 Foreclosure by advertisement and sale.** The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:
   (L) The trust deed, any assignments of the trust deed by the trustee or the beneficiary
       and any appointment of a successor trustee are recorded in the mortgage records
       in the counties in which the property described in the deed is situated; and
This further reiterates 86.060. Non-judicial foreclosure is ONLY allowed if any assignments were recorded in the mortgage records of the county, which were not done in any of the subject cases. All MERS assignments and transfers are statutorily defective..

The system of justice in Oregon and Oregon borrowers have suffered and are suffering irreparable injury by the actions of the Creditors, and there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, the Debtor respectfully request that this Court:

1. Deny the Creditors, and each of them, any Relief from the Section 362(a) Automatic Stay.

12

2. Issue a preliminary and permanent injunction enjoining all Creditors (doing business under any name, their agents, partners, servants, attorneys, representatives, subsidiaries, parent companies, owner or alleged real-party-in-interest of the Note and/or Trust Deed, employees, successors and assigns and all persons acting in concert and participation with them, directly or indirectly, through an corporate device, partnership or association):

   a) From proceeding with foreclosure on any of the properties which are the subject of this case.

   b) From submitting any affidavit in the future in any mortgage foreclosure case that does not comply with Oregon Rules of Civil Procedure;

3. ORDER the production by Creditors of all documents which may evidence ownership of the Notes and Trust Deeds, including all chain of such transfers of ownership.

4. ORDER the productions by Creditors of the actual blue-ink original Note, Trust deed, and all related closing documents and the disclosure of the name, precise current location and detailed contact information for the actual custodian of these documents.

5. ORDER the production by Creditors of all documents, payments, wire transfers of funds, checks, and all other which evidence the actual amount(s) paid at each and every transacting of the chain of ownership of the Notes and Trust Deeds herein.

6. ENJOINING Creditors (doing business under any name, their agents, partners, servants, attorneys, representatives, subsidiaries, parent companies, owner or alleged real-party-in-interest of the Note and/or Trust Deed, employees, successors and assigns and all persons acting in concert and participation with them, directly or indirectly, through an

corporate device, partnership or association) from executing any assignment that purports to assign a note on behalf of MERS;

7. ORDER Creditors to pay actual and non-economic damages to the Debtor, who has been egregiously injured by the conduct of the Creditors,

8. ASSESS, FINE and IMPOSE upon each of Creditors a civil penalty of Twenty-Five Thousand Dollars ($25,000.00) for each separate and appropriate violation described herein;

9. ASSESS, FINE and IMPOSE an additional penalty in the amount of $50,000.00 against EMC for their having intentionally and willfully attempted to trick the Debtor-borrower, by setting out and entering into a written payment agreement (which had no termination or sunset date), the borrower having complied with each and every such payment in precise accord with the schedule as set forth by EMC, and then suddenly, and without good cause, EMC dishonored and abrogated their own agreement.

10. GRANT such other relief as the court deems to be just, equitable and appropriate;

Respectfully Submitted,

_____
ELMER VINTON DUNHAM
**DEBTOR**

**UNITED STATES BANKRUPTCY COURT**  2249747905
**District of Oregon**

In re:  ) Case No.:  3:10-bk-42021
) Loan Number (Last 4):  6413
Elmer Vinton Dunham  )
)
Debtor(s)  ) CHANGE OF ADDRESS; OR, IF NOT DONE BY DEBTOR,
) ADDITION OF INTERESTED PARTY

I, THE UNDERSIGNED, CERTIFY THE FOLLOWING IS TRUE AND CORRECT:

1. The address of  ONLY    EMC Mortgage    must be changed or added.

2. The address change or additions for the party named in pt. 1 should be made as follows (CHECK ONLY ONE):

❏ a. CHANGE FOR BOTH DEBTORS (i.e., both debtors' addresses will be changed even if they currently have different addresses and only one debtor is named in pt. 1);

❏ b. CHANGE FOR ONLY ONE DEBTOR [i.e., only address of the debtor named in pt. 1 (or husband if both names appear in a joint case) will be changed];

❏ c. CHANGE FOR ONLY JOINT DEBTOR [i.e., only address of joint debtor (wife) will be changed even if both names appear in pt. 1];

❏ d. CHANGE FOR DEBTOR'S ATTORNEY;

☑ e. CHANGE FOR CREDITOR OR OTHER INTERESTED PARTY
[NOTE: An address change submitted by the debtor will result in the inclusion of a supplemental address for the creditor if it is different from one provided by the creditor on a proof of claim]; or

❏ f. ADDITION OF CREDITOR OR OTHER INTERESTED PARTY TO MAILING LIST
[NOTE: This form is ONLY for use by the PARTY whose address is being ADDED. LBF#728 must be used if the debtor needs to add such party.].

3. [Must be completed if 2a, 2b, 2c, 2d or 2e above was checked] The entity's old address as show in the case file is:
EMC Mortgage
3415 Vision Dr. Columbus, OH 43219

4. The entity's NEW address AND PHONE # is:  JPMorgan Chase Bank, N.A.
Chase Records Center Mail Code LA4-5555 - 700 Kansas Lane
Monroe LA 71203 866-325-4316

*Please note the change in creditor name to: JPMorgan Chase Bank, N.A.

Date:  May 02, 2011
By:  /s/ Maria Almarez (Replacing Jean Burnham)
Bankruptcy Analyst

Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

☑ THIS FORM MUST BE SIGNED AND WILL BE EFFECTIVE IMMEDIATELY!


7f9-3d75-4d33-ac9d-40109fede18d