Charles Barker III
Plaintiff in Pro Se
1548 SE 30th Avenue
Portland, Oregon 97214
mortgagerecon@gmail.com
Tel: 503-860-3633

UNITED STATES DISTRICT COURRT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

CHARLES MORSE BARKER III)

           Plaintiff )    CASE NO. **3:11-CV-00579-MO**

    v. )

JP MORGAN CHASE BANK; WELLS )    PLAINTIFF'S OPPOSITION TO
FARGO BANK; AURORA FINANCIAL )    MOTION TO DISMISS FILED BY
SERVICES; MORTGAGE ELECTRONIC )    DEFENDANTS BANK OF AMERICA,
REGISTRATION, INC. (aka "MERS"); )    BANK OF NEW YORK MELLON,
EMC MORTGAGE; BANK OF AMERICA; )    AND RECONTRUST COMPANY
BANK OF NEW YORK MELLON; )
UNITED STATES NATIONAL BANK (aka )
US BANK); FIRST AMERICAN TITLE CO., )    Request for Oral Argument
QUALITY LOAN SERVICE CORP OF )
WASHINGTON; LSI TITLE COMPANY )
EXECUTIVE TRUSTEE SERVICES; )
RECONTRUST COMPANY and DOES 1-50 )
)
          Defendants )
_____

      Plaintiff Charles Barker III hereby files this opposition to defendant Bank of America,

Bank of New York Mellon and Recontrust Company.

      As plaintiff Charles Barker III appears pro se, the terms "plaintiff", "I", "me", "my", and

"myself" appear interchangeably throughout this document, for brevity, readability, and clarity

purposes, as best comports to the context.

## PREFACE

On August 10, 2015, the Ninth Circuit Court of Appeals issued its Mandate, thereafter filed on September 2, 2015.  That ruling is attached hereto for reference.  In accord with that judgment, leave was granted by the Court of Appeals for filing of an Amended Complaint, which I filed on October 8, 2015 in the United States District Court, District of Oregon, Portland Division.

The original case, as well as the appeal, were filed jointly by myself, and my father-in-law Elmer V. Dunham.  Since the times of both of those filings, my father-in-law has passed away.  I am not an attorney, and, as was recognized by the Court of Appeals, I do not appear or speak for Mr. Dunham.  Consequently, I continue this case alone, in pro se, as both the plaintiff party, as well as the sole successor/heir to all financial matters of Elmer Dunham.  I am, and remain, the sole fee title holder of each of the properties which are still owned and which are involved in this litigation.

## OPENING STATEMENT

At the core of the Third Amended Complaint is that which permeates the Mandate of the Ninth Circuit Court of Appeals, which affirmed in part, reversed in part and remanded to this Portland United States District Court: it is made clear in that August 10, 2015 ruling that the Court of Appeals recognizes that there are substantive issues raised by plaintiff which require the process of full consideration by the District Court.  Clearly, the process of such full reconsideration as has been thus mandated would not be served by again prematurely disposing of this case by the banks' immediate and reactive attempts to "swat away" this lawsuit, which all defendants have again rushed to do.  As of this date, there have been multiple motions to

dismiss or motions for summary judgment that have been filed by the defendants herein, just since the new Amended Complaint on October 8, 2015.

I believe that the Ninth Circuit Court of Appeals has sent a message that is not opaque: the matters of this case need to be fully investigated, and examined by the District Court, including that a proper hearing be conducted and therefore a fully informed ruling rendered. This must necessarily include the proper conduct of discovery, production of relevant documents, examination of witnesses under oath, and the opportunity for both sides to present their case fully before the Court. Absent same, all parties and this Court will again experience a repeat of frustrating delays and recurrence of appeals, until the issues of this important case are finally fully vetted in a court hearing, with the requisite foundation in documents and testimony which only can reveal the truth of all circumstances, events, actions, legalities and equities which are the foundational fabric of this case.

There are substantive issues as to standing and who is the real-party-in-interest in the subject litigation; however, defendants Bank of America and Bank of New York Mellon have both misunderstood the ruling of the Ninth Circuit Court of Appeals as to plaintiff's validated standing, as well as failed to address or prove that either of them have any claim of a financial interest, ownership interest, or are a real-party-in interest as concerns the two real estate properties which pertain to them in this lawsuit: 1548 SE 30th Avenue, Portland, Oregon and 5246 SE Flavel Street, Portland, Oregon.

<u>OPPOSITION AND REBUTTAL TO DEFENDANTS MOTION</u>

Defendants Bank of America, Bank of New York Mellon and Recontrust immediately attempt to circumvent the discovery process and full hearing of this matter in open court, by seeking to quash all investigative inquiry via their knee-jerk motion to dismiss. There is no

mystery why they do this.  These defendants desperately fear being required to produce

documents that expose the fractured chains of asset custody, the alleged transfers of note and/or

trust deed ownership, the absence of any contractually mandatory monetary considerations in

those transfers, and the absence of accurate payment records from the predecessors *upon whose*

*standing, ownership and accounting the present defendants rely to claim any ownership of the*

*subject note or trust deed assets*.  Scariest of all to these defendants is the prospect of their

having to produce the actual persons who allegedly affixed their signatures to the documents

that purport to verify the "authenticity" or even the existence of the documents on which this

case is based - the documents which could affirm or refute any of defendants 'claims' of

ownership or interest in the note assets or the trust deed interests in real property.  Portending

ever more ominous for these defendants is the prospect that this Court will have the opportunity

to peruse these documents and testimonies, to reveal more serious, indeed nefarious, violations

of multiple federal consumer protection laws, and outright criminal violations, which expand

beyond the scope of this civil litigation, but can (and have been, in cases nationwide) be handed

over to the Department of Justice for criminal prosecution. (Footnote [1])

> For brevity of reference:
>
> - Bank of America is referred to herein as "BofA"
>
> - Bank of New York Mellon is referred to herein as "BNYM"
>
> - Recontrust Company is referred to herein as "Recontrust"
>
> - Bank of America, Bank of New York Mellon and Recontrust are collectively referred
>
>     to herein as "BABNYMR"

---

[1] Anyone who is unfamiliar with this would find it helpful to view expository films on this subject, including the recent "The Big Short", as well as "Too Big to Fail", "Inside Job", "Capitalism, A Love Story", and "Margin Call"

Addressing those items from the outset of their motion:

<u>Defendants section captioned 'Certification'</u>:

BABNYMR incorrectly states that "Bank of America, N.A. was erroneously sued as 'Bank of America'. Bank of America is the publicly disseminated trade name utilized by Bank of America, N.A.; as defendant herein, this includes all of their companies and divisions that operate under the Bank of America umbrella, not limited to a particular narrow entity of the defendants attempted choosing.

BABNYMR incorrectly states that "The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-Based Certificates, Series 2006-22 and the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-24" [itself an invisible and unknown "entity" of no proven existence, much less ownership claim or standing of any nature whatsoever] was erroneously sued as 'Bank of America'. Bank of America is the publicly disseminated trade name utilized by Bank of America, N.A.; as defendant herein, this includes all of their companies and divisions that operate under the Bank of America umbrella, not limited to a particular narrow entity of the defendants attempted choosing.

As it is BNYM that has now identified this "party":

i. What is the address and where is corporate registry for this alleged party defendant?

ii. Who are the executive officers of this alleged party defendant?

iii. Who are the owners and shareholders of this alleged defendant [disclosure is mandatory for corporate parties]?

iv. What are the assets of this trustee against which judgment recovery could be levied?

v. If this alleged defendant is a "trustee", as BNYM claims, for whom are they acting as

trustee?

vi.  What is the address and where is corporate registry for this alleged party for whom

they are purporting to act as trustee?

vii. Who are the executive officers of this alleged party for whom they are purporting to

act as trustee?

viii. Who are the owners and shareholders of this alleged party for whom they are

purporting to act as trustee [disclosure is mandatory for corporate parties]?

ix. Is this an express trust (any other type of trust would void an exemption under the

Fair Debt Collection Practices Act), and, if they allege it is an express trust,

where are the documents to prove same?

x.  What are the assets of alleged party for whom they are purporting to act as trustee

against which judgment recovery could be levied?

Bank of New York Mellon is the publicly disseminated trade name utilized by BNYM;

as defendant herein, this includes all of their companies and divisions that operate under the

Bank of New York Mellon umbrella, not limited to a particular narrow entity of the defendants

attempted choosing.

As defendant BNYM has themselves brought forth this additional, heretofore unknown

and unidentified defendant "The Bank of New York Mellon fka The Bank of New York, as

Trustee for the Certificateholders CWABS, Inc. Asset-Based Certificates, Series 2006-22 and

the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-24", this newly

disclosed defendant is hereby identified and added as Doe #1, without deletion of the Bank of

New York Mellon as an original defendant.

<u>Rule 7-1 Conferral</u>

Standing: Nowhere in the Ninth Circuit COA does it state that "only" Mr. Dunham (now deceased) has been granted leave to appeal. What that COA mandate does, in fact, actually state is:

**"Appellants shall be afforded leave to amend their complaint."**

(last sentence, in Paragraph 4). That is a <u>plural</u> "Appellants", not singular.

In paragraph 6, the COA mandate states

"Dunham has standing to pursue his claims",

but is does NOT state *only* Mr. Dunham has such standing.  Moreover, the remainder of that same sentence recites:  "and Barker is not committing the unauthorized practice of law"; consequently, this sentence is arguably confined to the context of some interpretation that I was seeking to speak for Mr. Dunham, which I did not and do not (and the COA specifically recognized same).

Finally, also in paragraph 6, the COA ruling states

**"Barker and Dunham proceed here as co-appellants."**

Nowhere does the COA ruling confine the remand and authorization to proceed to "only" Mr. Dunham.

<u>Defendants section captioned 'Motion'</u>:

Defendants' BABNYMR attorney James P. Laurick ("Laurick") states: "inexplicably the estates of Mary Dunham and Elmer Dunham are not parties to this action".  This can only be either a) a failure on Lauick's part to read the Third Amended Complaint ("TAC"), or b) an attempt to misrepresent the facts to this Court.  I made it expressly clear in the TAC that there

were no estates ever created for either Mary R. Dunham or Elmer V. Dunham, my parents-in-law.  They both died intestate, and any assets with which they had any involvement were family properties, purchased together, and in every case, all cash investments in the subject propeties were made by myself.

Moreover,  BABNYMR / Laurick's contention that I lack standing is wholly devoid of merit: I am the <u>only</u> party in this litigation who has suffered any financial loss, and is being placed at further risk of suffering financial loss: my *personal* cash losses, should any of these foreclosures be allowed to proceed, would be **$370,000.00**, itemized in detail in the Third Amended Complaint.   BABNYMR paid nothing to "acquire" these two loans, and thus canot lay claim to any economic injury.

Laurick's misrepresentations are still more egregious, when he states: "The Court of Appeals for the Ninth Circuit already refused to find that Plaintiff had standing to proceed". The <u>COA made no such finding</u>, and I refer this District Court to the August 10, 2015 mandate (copy attached) for verification of same.

 BABNYMR claims that the Dunhams and Plaintiff have defaulted on the loan payment obligations" are in an absolute vacuum of any evidence of same. No payment records have been produced by BABNYMR such as could begin to confirm or refute same. Moreover, BABNYMR have yet to prove that they have standing to assert default.  A party with no verified claim of ownership of an alleged receivable cannot lay claim to assert a default under any agreement related thereto.

BABNYMR claims that "Defendants' conduct is/was consistent with the loan agreements, and state and federal law."  This bald assertion is contravened by the historic settlement with the U.S. Department of Justice, on August 21, 2014, with Bank of America

paying **$16.65 billion dollars**, including a $5,000,000,000.00 penalty under the Financial Institutions Reform, Recovery & Enforcement Act (FIRREA) - the largest penalty *ever* levied.[2]

BABNYMR / Laurick claim:

- "Plaintiff lacks standing to sue"  - Defendants' argument fails on multiple grounds:

i. All cash down payment investments in each of the properties which are the subject of this litigation were and are my own cash investments.

ii. All capital improvements made to each of the properties which are the subject of this litigation were and are my own cash investments.

iii. All mortgage interest and principal paydown payments made on each of the properties which are the subject of this litigation were and are my own cash investments.

iv. All of the properties which are the subject of this litigation are owned by myself personally, and, prior to that time, were held in my wholly-owned private business accounting entities (Mortgage Reconstruction Associates, Woodstock Financial Corp).

v. All of the properties which are the subject of this litigation are, and have been without interruption, properly reported on my personal tax return. Redacted copied are available for the perusal of the Court upon request.

vi. All financial affairs of my mother-in-law Mary R. Dunham, and my father-in-law Elmer V. Dunham, inured to myself, and I am the sole heir/assignee of all of the subject properties. Were the defendants to question the validity of any successor interest in a property (and a trust deed, is, by definition, an *interest* in real property), any doctrine of equal application of justice to respective litigant parties would render it mandatory that it would void any validity of their claims of successor interest, as neither BofA, BNYM nor Recontrust is the

[2] Reference: U.S. Dept of Justice, Office of Attorney General; Public Affairs; Aug 21, 2014 (attached)

original lender; the original lender for both the 30th Avenue and the Flavel Street properties is

Countrywide Mortgage / Americas' Wholesale Lender (demised entity forcibly closed by

regulatory agencies).

    - MERS involvement:  MERS is irrefutably involved with the subject trust deeds, and

has been from the very moment of loan inception. The Opposition to MERS motion to dismiss

that I have filed on the same date as this BABNYMR is incorporated by reference as though

fully set forth herein.  MERS cites portions of *Brandrup* which they feel support their position

– e.g. concerning  MERS could not satisfy the statutory definition of a beneficiary to whom the

obligation is owed (which MERS was determined they were not), or that ODTA did not require

recordation of assignments - MERS wholly ignored the portions of the 46-page *Brandrup*

ruling that did not suit their purpose.  These include 353 Or 668 (2013):

        - Page 688: "...the foreclosing party must provide proof that it has the power to

enforce the note (referencing Alan M. White, *Losing the Paper – Mortgage Assignments, Note

transfers and Consumer Protection*, 24 Loy Consumer L Rev 468, 476-77 (2012).  No such

proof has been produced by MERS or any of the defendants in the subject litigation.

        - Page 700" "Thus, no part of our [the Oregon Supreme Court] answer...should be

taken to suggest that, where the foreclosing party is not the original lender, the foreclosing

party need not provide definitive documentation of its status as the lender's successor in interest

to establish its right to foreclose".  Again no such proof has been produced by MERS or any of

the defendants in the subject litigation.

        - Page 700-701: "Although we [the Oregon Supreme Court] have concluded that

the lender or its successors need not record assignments of the trust deeds that occur by

operation of law, the fact remains that, when those persons fail to do so, they are vulnerable to challenges that may force them to judicially establish their interests ad authority to act."

    - Page 709-710: "(4)(a)  Does the ODTA allow MERS to hold and transfer legal title to the trust deed...after the note secured by the trust deed is ransferred from the lender to a successor or a series of successors?"

  Answer: "**No**."

  - Page 709-710: (4)(b)  Does MERS nevertheless have authority as an agent for the original lender and its successors in interest to act on their behalves with respect to the nonjudicial foreclosure process?"

  Answer: "**We are unable to determine the existence, scope, or extent of any such authority on the record before u**s."

  On Page 4-5, of their motion,  BABNYMR / Laurick maintain:

"In July 2009, MERS appointed ReconTrust as the successor trustee under the Deed of Trust.  MERS subsequently assigned its agency interest in the Deed of Trust to The Bank of New York Mellon...as reflected in the Assignment recorded in October 2011".

  This exposes two irretrievably fatal flaws in  BABNYMR / Laurick's argument:

  1. By their own admission, MERS had appointed a successor trustee, Recontrust, as the successor trustee in July 2009, thus terminating on that date any authority or agency MERS may have ever had as concerns the subject trust deed on 1548 SE 30th Avenue. Therefore, their assignment recorded in October 2011 is irrefutably inoperative and fatally defective.

  2.  Any defense that this loan is not subject to the Fair Debt Collection Practices Act fails, in that BABNYMR / Laurick contend (without proof) the subject loans were in default at

the time of their October 2011 assignment, thus negating the exception from being subject to the FDCPA that a debt obligation could not be in default at the time of their assignment.

- Property Transfers

Plaintiff readily acknowledges the property transfers to my own wholly-owned business entities, and ultimately title vesting back to my own personal name.  However, these dates of entity and personal transfer are not indicative of the time of my acquiring an interest in the subject properties. My interest in each of the subject properties commenced with the first day of property purchase, as the down payments and thus 100% of the financial interest in the subject properties was my own from that date of purchase / mortgage loan recordation.

On Page 5,  BABNYMR / Laurick pretend to add content and language to the COA Mandate that does not exist, all to serve their own interpretation and their wish that such language did exist.  The Court of Appeals made no such finding that they did not expressly extend the finding of standing to pursue the claims to myself, the sole remaining plaintiff, following the death of my father-in-law. Had the Court of Appeals been desirous and intending of precluding my pursuit of the claims of the instant litigation, they would indeed have said so. **This they did not do**.

Bizarrely,  BABNYMR / Laurick, on Page 9, paragraph starting "In an attempt… retroactive standing" make a shrill claim, and provide case citations which abjectly undermine and would render void, their own standing.  "However, in order to sue in federal court, a party must first have Article III standing.  It must be present at the inception of the lawsuit."  Laurick cites *Lujan v. Defenders of Wildlife,* 504 U.S. 555,570 n.5 (1992) and "Standing is to be determined as of the commencement of suit."  *Keene Corp. v. United States,* 508 U.S. 200, 207 (1993). And then goes on to cite: "It is insufficient for a party to claim he obtained standing

during the pendency of the action."  See *Arizonians for Official English v. Arizona,* 520 U.S. 43,64, 67 (1997).

Yet, confounding their own argument, in the first paragraph of Page 5 of their motion to dismiss, BABNYMR / Laurick admit:   "MERS subsequently assigned its agency interest in the Deed of Trust to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-Based Certificates, Series 2006-22 " in October 2011. **This lawsuit was filed on May 12, 2011**. Consequently, by their own cries to negate a transfer or assignment, their attempt to assign from MERS to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-Based Certificates, Series 2006-22 was, and is, **void** – over and above the additional element that MERS had already assigned its agency authority over to ReconTrust <u>over three years earlier in July 2008, and had no remaining authority to assign.</u>

Significantly, on page 9,  BABNYMR / Laurick acknowledge and admit that, while "MERS failure to meet the statutory definition of a 'beneficiary'" does not automatically "renders the [Deed of Trust] void" or that this "does not mean that MERS identification… renders that instrument void", they, however, provide no citation that provides a definitive ruling or law that renders any interest which has been assigned by MERS <u>to be valid</u>, absent documentation and proof furnished to a court – because no definitive citable ruling exists as of this date, in either Oregon State Courts (including both Appellate and the Oregon Supreme Court) or in federal courts (including Appellate courts or the United States Supreme Court). Furthermore, in *Niday*, that "MERS **may** [emphasis added] be able to present evidence to a trial court sufficient to establish that it was the beneficiary's agent and able to act in that capacity"; which defendants have abjectly failed to produce in the instant litigation.

On Page 12,  BABNYMR states: "Under *Brandrup* and *Niday*, BNY Mellon's status as beneficiary drives not from any assignment from MERS, but from its undisputed status as lender."   BABNYMR's attorney Laurick displays a clear misunderstanding of the definition of "lender".  Black's Law Dictionary provides an uambiguous definition: "He from whom a thing is borrowed."  No one in our family (myself or my parents-in-law Mary and Elmer Dunham) borrowed any money from Bank of America on these properties. No one in our family (myself or my parents-in-law Mary and Elmer Dunham) borrowed any money from Bank of New York Mellon on these properties.   No one in our family (myself or my parents-in-law Mary and Elmer Dunham) borrowed any money from Recontrust on these properties.  Our loan was only from Countrywide / America's Wholesale Lender, and none of defendants can therefore claim to fall within the definition of "lender"

The Oxford Dictionary recites a lender to be: "An organization or person that lends money."   Defendants have attempted to bring forth  "The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-Based Certificates, Series 2006-22" as the supposed "correct" defendant.  However, this "trustee" has not only loaned no money, ever, to anyone in our family, but this trustee has no record of ever loaning *anyone* any money.  It is merely some form of an asset certificate, and the very same aggregation of a collateralized debt obligation (CDO) for which Bank of America was investigated and cited by the U.S. Department of Justice, and on which the payment of $16.65 billion dollars in that historic settlement was predicated.

**MERS is squarely in the middle of this scheme, and in each and every one of the loans** which are the subject of this litigation.

*What* MERS has done is made plainly clear: MERS was a "nominee" (which never gets defined) that supposedly held the trust deed liens on our properties from the very first moment of inception of each of the loans relevant to the instant litigation. However, a) MERS never really was (or could have been) the beneficiary, MERS is some kind of registry that was formed by the banks themselves to avoid recording the alleged transfers of the asset (but only the trust deed, as MERS clearly never had any authority to transfer the Notes, and, as is well established in Oregon law, the trust deed follows (and supports) the note, not the reverse), b) MERS never loaned us so much as a single penny, but claimed to be the holder of a security interest in our property, and c) MERS disguised and hid any subsequent true owners of our loan from us, denying us access to be able to work with whomever our lender might be when the mortgages became untenable in the crash of real estate values – a situation that was precipitated by the very same lenders who had intentionally overheated the market for their own profit purposes. By separating the trust deed from whatever was going on with the multiple and repeated hand-offs and transfers of the Notes, any security interest in our properties was bifurcated and now void.

*How* MERS did this was by inserting themselves into the documentation right at the moment of loan closing.  Nowhere in the loan application or approval process, or ***in any of the disclosure documents*** that were furnished by the lender whilst we were seeking financing for our property did MERS appear.  Suddenly, without any prior mention, disclosure or description of what MERS is or that they would appear as some kind of participant on our loan, the entity "Mortgage Electronic Registration Systems" / "MERS"  surfaces from nowhere, as a heretofore unknown claimant as a "nominee" with some kind of "legal interest" in our loan [and the term "our" is used here, as these were family acquisitions, that we did together, with all cash down

payments being furnished by me, and my parents-in-law being involved with assisting with property financing; they are both now deceased, yet I am now the only one left alive who must carry on the financial activities of our properties].  No one explained these terms or MERS sudden involvement, and no one offered us the opportunity to say "no, this is not the deal that was presented to us"; it was just sign or get lost, a true contract of adhesion.  From that moment forward, our loans were apparently sold of immediately to other companies or became mired in 'collateralized debt obligation' (CDOs) schemes, the Notes going to as-yet unknown hands, and the trust deed being in limbo with MERS.

    The allegations are both "generalized" and specific to the instant loans and circumstances: MERS is irrefutably a complicit party in millions of American homeowner's loans nationwide, and has been sued in every state in the nation, in both state and federal courts, as a result of their creating a "registry" wholly outside the governmentally administered public recording offices located in each state in the nation, as well as being a form of "straw man" entity purporting to hold trust deeds recoded against tens of millions of homes, and then attempting to foreclose, despite their never loaning any money and despite that they NEVER were the beneficiary or owner of the Notes.  As held in *Brandrup*, MERS was later deemed to be unable to be a valid beneficiary.  The allegations in the Third Amended Complaint are also **specific** to each of the subject properties,  with MERS appearing as the nominee in both the Bluff Road, Sandy and the 1610 Broadway, Portland wrongful 'trustee sale' foreclosures, as well as each of the SE Flavel, SW Florence, SW 30th and Penny Avenue loans, concealing the true owners of each loan, and purporting to pass ownership of the trust deeds against each property to later 'successors'.  In each property, that alleged transfer of ownership only surfaced in the public record to a later 'trustee', who, in the instance of each and every of our properties,

then attempted to assert standing and a right to foreclose, concealing the true chains of ownership, and hiding the validity of the purported transfer of our loans.

*First*, although MERS has a history of their own presumptive rightness of their positions[3], standing is not established solely on a basis of whether or not I was an obligor on the Notes or Trust at issue. My standing exists on multiple and stronger bases: a) all of the cash down payments on each and every one of the properties which are the subject of this litigation were my own personal funds; b) all of the capital improvement investments on each and every one of the properties which are the subject of this litigation were my own personal funds; c) all monthly payments from the outset of each mortgage were made by myself; d) the accounting and tax reporting for every one of the properties which are the subject of this litigation were properly reported on my personal tax return; e) with the exception of the Bluff Road and the Broadway properties, which were wrongfully foreclosed in a trustee's sale, title vesting for the properties which are the subject of this litigation has been for many and remains in my personal name, and in the name of my solely-owned business entities prior to that time; and f) despite MERS pretensions that there are or were "estates" for my parents-in-law Elmer V. and Mary R. Dunham, both now sadly deceased, there were never any estates for either of them (and this fact was been made well known to defendants); all properties were long in my name, all financial affairs and all mortgage payments for the properties we had acquired were made solely by myself, and there were no assets about which any "estate" could have been created or administered.

---

[3] MERS has contended and litigated in thousands of cases nationwide that they are the nominee and that the are the holder of legal title, because "it says so in their documents", and that borrowers "acknowledged this by signing the loan documents", this has been struck down in all recent cases, to the extent that MERS now no longer raises this argument.

*Second*, while neither I, nor my since-deceased parents-in-law knowingly created a relationship with MERS (as above described, MERS appeared only on loan documents at signing, with no prior disclosure of their involvement, and no description of why they suddenly appeared, or why they would be named as holding any interest in our properties), it was defendant MERS who inserted themselves, now inextricably, into our legal relationship, when they became the holder of "legal title" to our mortgages.  As I am the owner of each of the properties which are the subject of this litigation, and because it was my cash funds that purchsed these, made capital improvements and made the mortgage payments, the relationship is extant, whether any of us like this or not.

*Third*, the Third Amended Complaint ("TAC") specifies claims on which relief can be granted, including that the trust deeds a void, as a result of the invalidated transfers (see *Glaski v. Bank of America*).

BABNYMR represents incorrectly that "Plaintiff lacks standing because he is attempting to pursue claims on behalf of Mr. Dunham...not on Plaintiff's own claims".  This is a false statement by defendants and their attorney.  As was clearly recognized by the Ninth Circuit Court of Appeals, I do not appear on behalf of my Elmer V. Dunham; I appear pro se solely on my own behalf, as the real-party-in-interest, as the party whom BABNYMR and all other defendants are attempting to injure, by attempting to foreclose on the properties into which I have invested  **$370,000.00** of my own money.  Defendant BABNYMR attempts to portray me as a non-party, based on the premise that I was not the original note obligor.  At best, this is a slippery slope that these defendants, and all other defendants, would be well advised to avoid pursuing.  BABNYMR, as well as other defendants herein, wish to portray me as not a party, as I was not the original borrower.  Yet, they simultaneously wish to be

acknowledged as the note beneficiary or the trust deed holder, in a chain of successor

assignments or transfers.  Worse yet for them, all of the assignments of my interest, as well as

my prior holdings in my business entities, were properly in the public record;  this must be

compared against the situation of this and all defendants herein: the assignments or transfers of

the Notes and Trust Deeds, including those from MERS, were hidden in MERS private and

secret chain of assignments, the record of which has not even yet been produced by MERS.

They cannot have it their way one one hand, and hope that an opposite rule will apply to the

opposing party.  If a transfer or assignment of an interest in this property is to be considered

void, it must apply equally to each and all parties.  Thus, if I am determined to not be a valid

party,  then none of the present defendants may lay claim to any interest in these properties, as

the original actual lender (Countrywide Mortgage / America's Wholesale Lender), are entities

that no longer exist.

Defendants next raises that:

"Standing, at a minimum, requires plaintiff to show that (1) he has suffered an injury in

fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable

to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court

decision."  *Angels All. Grp. v. Recontrust Co.*

This is a repeat of the defendants propensity to cite cases which affirm and support my

position, to wit:

(1) my injuries, totaling $370,000.00, are very specific, concrete, particularized to each

specific property as set fourth in the TAC, both actual (in the case of the Bluff Road and

Broadway properties as a result of the wrongful foreclosures) and imminent (in the case of each

of the other four properties, which defendants have attempted to foreclose, and in which MERS

was involved with every one.

(2)  the injuries are directly traceable to the conduct of MERS, which is involved with every one of the six property trust deeds, as evidenced by the recorded trust deed documents.

(3) my financial injuries, both those which have already occurred, and those which are imminent, would be addressed by a favorable court decision in the instant litigation.

*First*, defendants are incorrect.  Not only do I have standing  - in fact, I am the only party, whether plaintiff or defendant, in this case who has documented and proven status as a real-party-in-interest in the instant litigation - but I am the sole heir/successor on each and every of the subject properties, and I am the **only** party who is able to prove to this Court that I have been injured financially.  I have been injured by my loss of actual cash invested; defendants can make no such claim.

*Second*, the fraud claims are is pleaded with particularity, with respect to both the defendants ceasing to receive and post the monthly payments I continued to tender, and as to MERS and other defendants claiming an interest in the subject Notes and Trust Deeds that they do not possess.

*Third*, defendants attempt to portray themselves as not subject to the FDCPA - the Fair Debt Collection Practices Act.  Just who is it for whom they believe Congress enacted this legislation?  It is to protect consumers - such as myself - from improper debt collection practices -such as are practiced by defendants herein.  Any rational reading of this case and the FDCPA exposes that defendants are indeed none other than debt collectors - it is what is contained - actually, this exact language is *prescribed by law* in their own documents:

"THIS IS AN ATTEMPT TO COLLECT A DEBT"

Plaintiff's own quotes and citations describe precisely that which invokes applicability of the FDCPA.  The FDCPA defines debt collectors as:

"Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."     15 USC Sec 1692a(6).

Dissecting the very clear and precise language of this citation:

i. FDCAP defines debt collectors as:

ii.  "a person who uses any instrumentality of interstate commerce": Bank of America is a corporate entity ("person") chartered and headquartered in Charlotte, North Carolina.  Bank of New York Mellon is headquartered – not surprisingly – in New York City.  ReconTrust is chartered in Delaware, but lists corporate headquarters at 1800 Tapo Canyon Road, Simi Valley, California.  The subject properties are all located in Oregon.  The original loan documents were executed in Oregon. Plaintiff is an Oregon resident, and I am the sole party claiming an interest, right and title to these properties. Consequently, all documents involved with the subject notes and trust deeds involve an <u>instrumentality of interstate commerce</u>.

iii.  "or the mails in any business": Defendants have used the United States mails in the course of their attempts to collect debt on the Bluff Road and Broadway non-judicial trustee sales, and they used the mails to in their dealings with claimants of successor interests in the Notes and Trust Deeds.

iv.  "the principal purpose of which is the collection of any debts": while defendants attempt to obfuscate the fact that they were "merely attempting to foreclose" (on the 30th

Avenue and Flavel Street), that is both fallacious, and it is well established in state and federal law that a mortgage or trust deed is only security for the performance of a debt obligation; one cannot "default" a trust deed.  It is only a default in the <u>payment of a debt (the Note)</u>, which default had been alleged by defendants, which only then can trigger an attempt to recover that debt by foreclosure on a pledged security collateral asset.  The trust deed is incident to the note, not the reverse; *Barringer v. Loder*, 47 Or 223, 229, 81 P 778 (1905). The sole purpose of defendants in their earlier attempts to pursue a "trustee's sale" type of foreclosure is therefore irrefutably the *collection of a debt*.

     v.  "or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another":  I have taken the time to research the activities of "BNYM as trustee for...'xyz'-named other CDO entity - there are literally hundreds of these cases they have filed in the State of Oregon, and thousands in the 50 states of the United States. I am unable to find even a single litigation where 'BNYM as trustee' is doing anything *other* than attempting to collect a debt due or asserted to be owed to whomever is the <u>actual</u> (often invisible) owner of the loan.  BNYM as trustee is engaged in no banking or depository activities.  Nor is BNYM as trustee engaged in any financial advisory services.  BNYM as trustee is engaged in no lending of any money.  Clearly, BNYM as trustee has had one purpose only: It *regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another*

     vi.  Finally, the FDCPA excludes "consumer creditors, a mortgage service company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned".  Also dissecting these criteria:

- BNYM as trustee is not a consumer creditor; they make no direct loans to consumers

- BNYM as trustee is not a mortgage service company, it collects no mortgage payments; it's sole purpose is to attempt to foreclose on people's homes.

- Even if the MERS assignments could be deemed to be valid (see above, Question # 4 to the Oregon Supreme Court), those were done only after the allegations that that the debts were in default.

Therefore, as a result of MERS of the 2011 timing of BNYM as trustee transfer [even above the fatal defect that they no longer had any authority to make such an assignment or transfer, as they had assigned the agency to ReconTrust in 2008], the defendants allege that those debts were in default - at the time it was assigned to them.  As a consequence of this, the exclusion upon which defendants try to rely, is inapplicable, as that exclusion recites "as long as the debt was not in default at the time it was assigned", in accord with 15 USC 1692a.

As a result of evaluation of each of the criteria such as might exclude BABNYMR, BABNYMR herein does not qualify for any of the exclusions, and IS A DEBT COLLECTOR as defined under the federal Fair Debt Collection Practices Act, and is thus subject to all provisions thereof pertaining to their attempt to collect the subject debt.

*Fourth*, defendants make a fallacious contention that "wrongful foreclosure" fails because "no foreclosure has taken place".  Defendants contention fails on two bases:  First, ReconTrust, as well as BA and BNYM, were inalienably involved in the previous attempted 30th Avenue and Flavel Street trustee's sale 'non-judicial' foreclosures".  Second, BABNYMR future *intentions* are clear, and it is not reasonable to expect that a person should refrain from stepping out of the path of a speeding subway train, merely because the impact and injury has

"not yet occurred"; the <u>impending injury is plainly predictable</u>.  Any reasonable person can

anticipate that failure to step off the tracks would result in injury or death.  In the instant

circumstances, the intentions of BABNYMR and their cohorts and later "assignees" are plainly

evident: they seek to take the subject property for their own financial benefit, to my extreme

financial injury: the loss of my hundreds of thousands of dollars of down payments that I made

on the subject properties, my capital improvement dollars and the payments and principal pay-

downs that I made throughout the years.

*Fifth*, Unjust (and unfair and inequitable) enrichment of the defendants would

predictably occur if they were allowed to proceed with any foreclosure.  Moreover, in granting

the Trust Deed security interests in the subject real properties, that benefit was conferred by my

predecessor Mary Dunham (Footnote [4]), and the defendants seek to take for themselves equity

and money that does not belong to them, including all of my down payments: I placed over

$370,000 in cash down payment and additional monies I have invested in subject property

capital improvements, not to mention years of mortgage payments, including principal

reductions on the subject Notes.

*Sixth*, the Securities Act of 1933 specifically does not restrict private rights of action to

exclusively only those who are parties to the particular securities transactions. Actions are

sustainable for appurtenant harmed parties; in the subject matter, I suffer from threats and

attempts by alleged, <u>but plainly unproven</u>, owners of Notes and Trust Deeds that have become

included batches of other home loans that are offered, sold, bought, traded, transferred in a

Collateralized Debt Obligation (CDO), thus becoming regulated as securities, as defined by the

---

[4] This interest was conferred by original borrower Mary R. Dunham, which then inured to my co-plaintiff Elmer V. Dunham, who became deceased during the pendency of this litigation, and all rights, title and interest inured to Mr. Dunham's sole heir and successor-in-interest, Charles Barker III

Securities Act of 1933.  Bank of America's admission that the CDO's had become regulated securities is supported by the levy of $134.84 million in Securities & Exchange claims in the Department of Justice settlement.

 *Seventh*, the patterns of behavior exhibited by BABNYMR, and the repetitive multiplicity of their a) transacting, transferring, selling, buying and assigning the subject Note and Trust Deed, and their repetitive and demonstrable proclivity to then attempt to foreclose on peoples homes - tens of thousands of people's homes throughout the United States - rise to the level of RICO violations by definition.

 *Eighth*, Conversion is applicable, as a) conversion applies as there exists both real and personal property in the homes on upon which defendants have already foreclosed and have attempted to foreclose, and b) BABNYMR and their co-defendants attempt to obtain money judgments in foreclosure processes, which money judgments are, by definition, personal property, and they seek to convert such cash to their own purposes and profits

 *Ninth*, contrary to defendants' contention that there "are no such causes of action for 'gross financial inequity' or 'windfall profits'". Quite the opposite is the case herein, which has been specifically noted by the Ninth Circuit Court of Appeals, in their August 10 Mandate, to wit: "The district court did not address claims of 'general unfairness' when disposing of the motions to dismiss and for summary judgment".  The "general unfairness" term employed by the COA is even broader than the terms 'gross financial inequity' or 'windfall profits'  Thus, these claims exist, ans as noted by the Court of Appeals, they have yet to be addressed by the district court.

## <u>THE STANDARD FOR DISMISSAL IS NOT MET</u>

In the present context of this case, a motion to dismiss is effectively identical to a motion for summary judgment. The standards for such a summary judgment are precise: the defendants motion to dismiss / summary judgment fails on the most basic premise and statutory prerequisite that requires that there be *no issue of material fact*. As is plainly evidenced by reading the complaint, and the defendants subsequent motion to dismiss, there are multiple and myriad contested and controversial issues of material fact. On this threshold test alone, the subject motion for summary judgment must be rejected.

<u>Burden is on Movant.</u> The defendants current filing is a motion to dismiss, effectively no different than a motion for summary judgment that seeks to dismiss a case even before discovery, document productions and depositions have commenced.  In considering a such a motion, a court must distinguish between the factual allegations and legal conclusions asserted in the complaint. **Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.** <u>American Family Ass'n, Inc. V. City & County of San Francisco</u>, 277 F.3d 1114, 1120 (9th Cir. 2002).  In the instant case, I am is the nonmoving party, and the my allegations of facts not only must be taken as true, but sufficient foundations on which very real issues of fact and law are already demonstrably in evidence.  Moreover, even a cursory test of construal in the light most favorable to the nonmoving party renders appropriate a denial of the motion to dismiss.

1.  Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories show that there is no genuine issue as to any material fact.  Defendant's motion fails, as there are multiple issues as to material facts, as herein set forth.

2.  The evidence must be viewed in *light most favorable to the non-moving party*. In the instant case, plaintiff is the non-moving party, and thus evidence must be viewed in plaintiff's favor. *State ex rel. Bronster v. Yoshina*, 84 Hawaii 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp*. 79 Hawaii 110, 112, 899 P.2d 393,395 (1995)).

3.  The moving party bears the ultimate burden of persuasion.  This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Pioneer Mill Co., Ltd v. Dow,* 1999 WL 174460, 6 (Haw. 1999).

4. The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party.

**H.  Summary judgment is a drastic remedy. To avoid improperly depriving a party to a lawsuit of the right to a trial on disputed factual issues,** summary judgment must be "cautiously invoked". *Id. a*t 6.

I. The statutory standards for the granting of summary judgment have not been met in the instant motion by Defendants. Black's Law Dictionary gives us the definition:

> In determining what constitutes a genuine issue as to any material fact for   purposes of summary judgment, an issue is 'material' if the facts alleged are such as to constitute a legal defense or are such nature as to affect the result of the action.  A fact is 'material' and precludes grant of summary judgment if proof of that fact would have effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties, would necessarily affect application of appropriate principle of law to the rights and obligations of the parties.

There are substantive matters of both material fact and of law at issue in the subject litigation.  It is irrefutable that there are a host of disputed matters concerning this loan, ranging from the threshold issue of whether MERS even had authority to assign the trust deeds after the first transfer of the respect Notes, to whether the alleged assignments of ownership of either the Trust Deed or the Note were void, to whether federal debt collection practice laws were violated, to matters of fairness and equity, and the other issues raised hereinabove and in the complaint.

Defendants contend exercising a contractual and statutory power of sale, of course, cannot constitute fraud.  Taken as a generic statement, few would contest same.  However, when applied to specific circumstances, in the subject case defendants MERS pertaining to the 30th Avenue and Flavel Street properties, the fraud occurs when such a 'power of sale' has been promulgated by a party who had no authority to do so.  This would be no different than my filing a notice of default on my neighbors property, claiming to be the beneficial interest owner of their loan, and foreclosing without any court requiring me to prove that I truly was the owner.  Tragically, this has occurred in countless thousands of foreclosures nationwide, since the 2007 collapse of the real estate and mortgage markets, the causation of which was the wanton appetite of banks and securities firms, all acting in concert, in their schemes to sell off CDO's to investors with artificially inflated AAA bond ratings from Moody's, Standard & Poor, and Dunn & Bradstreet.  Moreover, the lenders created the fraud themselves, by failing to actually transfer the rights to the individual mortgages in their CDO pools, in their frenzy to monumentally profit as they handed these off to an untraced chain of investors.  This is why it is **absolutely mandatory** to deny this motion to dismiss: no one, not myself, not any of the

defendants, and not the Court, can yet ascertain whether these defendants had (or have) any legally cognizable right to attempt to initiate a foreclosure of any kind, and until the documents and sworn testimony are produced, no determination can be made as to the veracity of their unsupported claims of ownership or as a real-party-in-interest, much less as an "injured party" with standing to try to assert a claim of interest to foreclose on real property.

The definition of a contract of adhesion is an "agreement between parties of unequal bargaining power, offered to the weaker party on a 'take-it-or-leave-it' basis". *Sprague v. Quality Restaurants Nw, Inc.* It is an irrefutable observation that the instant circumstances of this loan constitute the definition of a contract of adhesion: There can be no questioning that Bank of America and Bank of New York Mellon, two of the largest wealth institutions in America[5], and their wholly-owned agent MERS, has a monumentally stronger position than this borrower; should anyone like to question same, we can require the production of balance sheets for the bank and for the borrower. The original lender presented their loan documents, already fully printed. The mortgage company afforded no opportunity whatsoever for the borrower to interject amendments or edits, such as could result in a more balanced relationship between borrower and lender - e.g. a provision that if the loan was going to be sold, that, at the very least, the borrower would be notified of any proposed sale or transfer, and provided with a copy of the transfer document, so the borrower could at least be aware of the actual owner of the loan with whom one could correspond, make payments, or contact if any issues arose. And, in the instant case, issues did indeed arise. When a progression of supposed 'loan servicers' appeared, our ability to communicate directly with the actual owner of our loan - if it was

---

[5] Bank of America is the 2nd largest asset bank in America, at $2.1233 *trillion,* and Bank of New York Mellon is the 5th largest, at $360.51 billion. Source: Wall Street Journal, Markets & Finance

different than the mortgage company from whom we actually borrowed the money - was obstructed and precluded, as we had no way of ascertaining who was the owner of our loan in order to make certain that they continued to receive and post the monthly payments we were sending in.  Eviscerated of our ability to be able to contact our lender, we were stuck in each case with but a loan 'servicer', who refused to get our payments properly received, booked and posted to our account.

Consequently, not only do we have here a true contract of adhesion, but we have an occurrence of harm having been inflicted upon the weaker party as a result of the dominant position of the drafter of that contract.

As quoted, under Oregon law, the fact that a contract is adhesive does not alone render it "unenforceable"; but when coupled with the harm that has been inflicted upon plaintiff as a direct result of the subject contract, that adhesive contract is rendered unenforceable.

The subject contracts (the Notes) have been rendered additional void, as there are no valid assignments of the subject property Notes or the Trust Deeds associated therewith which have been presented by the defendants.

In accord with the standard constituting an ultra vires contract, the subject assignments (if they ever even occurred) are not merely voidable, but they are **void**.  *Glaski v. Bank of America Nat'l Ass'n*, 218 Cal App. 4th 1079, 1082, 160 Cal Rptr. 3d 449, 452 (2013)

<u>THE NINTH CIRCUIT COURT OF APPEALS SPECIFICALLY RULED
THAT MERS WAS NOT A VALID BENEFICIARY</u>

On Page 2, section number 2, the Ninth Circuit Court of Appeals ruled:

**"The district court erred in concluding that MERS is a valid trust deed beneficiary."**

This mandate of the COA has two profound effects upon the instant litigation:

1. As it was mandated that MERS is not a valid trust deed beneficiary, then each of the six trust deeds that are the subject of this case are defective from their origination, rendering both any later assignments fatally defective, and rendering all six recorded lien interests void.

2. These fatal defects require that MERS remain as an integral party defendant, and therefore MERS cannot be dismissed from this case.

<u>THE NINTH CIRCUIT COURT OF APPEALS SPECIFICALLY RULED
THAT THE FRAUD AND COMMON LAW FRAUD CLAIMS WERE PREDICATE UPONS
MERS INABILITY TO SERVE AS A VALID BENEFICIARY</u>

On Page 3, section number 4, the Ninth Circuit Court of Appeals ruled:

**"...appellants predicate their fraud and common law claims on the theory that MERS cannot serve as a valid trust deed beneficiary. Because the Oregon Supreme Court has held definitively in appellants' favor on this issue, we remand the fraud claims to the district court."**

As a consequence of this mandate, not only has the COA ruled that the fraud claims are viable and require the full consideration of the district court – which would not be served by a repeat of the earlier summary dismissal prior to full discovery and a trial in open court, but that <u>MERS is inextricably entwined in the fraud</u>, and cannot be dismissed from this case.

## SUMMARY

BABNYMR's motion to dismiss is effectively identical to their previous motion to dismiss they filed soon after the outset of this case.  The Ninth Circuit Court of Appeals made it clear, in reversing part of the earlier District Court dismissal, and remanding back to the District Court for further consideration, that there are substantive issues which required the review and hearing of this case, with particularity, the claims for general unfairness, which were recited in the mandate of the COA as to be inclusive of a broad range of claims, which had not been specified by the district court. Over and above the many violations of federal law committed by BABNYMR and all defendants, the COA has made clear that the issues of financial inequity and unfairness are central to this case.  As the United States courts are judicial forums of both law and equity, an incumbent responsibility exists to correct and compensate the egregious relative inequity that I have suffered in the experience of BABNYMR and the other defendant banks and their complicit cohorts seeking to abscond with $370,000.00 of my own savings for their own profit purposes.

## CONCLUSION

As a consequence of the foregoing, BABNYMR motion to dismiss must be denied, and an order issued from the Court that discovery, document production and depositions are to proceed forthwith, such that all facts, documents and testimony may be prepared for presentation to this Court for a fully informed evaluation, hearing and ruling thereon.

Respectfully Submitted,

February 16, 2016                         *s/Charles Barker III/*
                                          Charles Barker III
                                          Plaintiff in Pro Se

Charles Barker III
Plaintiff in Pro Se
1548 SE 30th Avenue
Portland, Oregon 97214
mortgagerecon@gmail.com
Tel: 503-860-3633

## UNITED STATES DISTRICT COURRT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

CHARLES MORSE BARKER III)
                                        )
          Plaintiff        )     CASE NO. 3:11-cv-00579-MO
                                        )
       v.         )
                                        )     CERTIFICATE OF SERVICE
JP MORGAN CHASE, et al   )
                                        )
        Defendants    )
_____

I hereby certify that the attached Opposition to Motion to Dismiss, was served upon the following parties and/or their respective attorneys by U.S. Mail and/or electronic mail, on February 16, 2016:

| | |
|---|---|
| Robert Hakari, Attorney | Tim Cunningham, Attorney |
| Robert C. Dougherty, Attorney | Rochelle Stanford, Attorney |
| Mellissa Robbins Couts, Attorney | Kevin Kono, Attorney |
| Michael John Farrell, Attorney | Tim Cunningham, Attorney |
| Michael Gerst, Attorney | Fred Burnside, Attorney |
| Tarifa B. Laddon, Attorney | Eric Tsai, Attorney |
| Teresa M. Shill, Attorney | James Laurick, Attorney |
| Stephen Yoshida, Attorney | Tamara Purcell, Attorney |
| Peter Salmon, Attorney | Carrie Majors-Staab, Attorney |
| Lisa Bass, Attorney | Eric Marshack, Attorney |
| Lynn Nydam, Attorney | Robert Hakari, Attorney |
| Tim Cunningham, Attorney | |

Dated: February 16, 2016              *s/Charles Barker III /*

                                      Charles Barker III,
                                      Plaintiff in Pro Se