Charles Barker III
Plaintiff in Pro Se
1548 SE 30th Avenue
Portland, Oregon 97214
mortgagerecon@gmail.com
Tel: 503-860-3633

UNITED STATES DISTRIST COURT
FOR DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| CHARLES BARKER III | ) |
| | ) **CASE NO. 3:11-CV-00579-MO** |
| | ) |
| Plaintiff | ) |
| | ) **SUPPLEMENTAL BRIEF** and |
| vs. | ) CONTROLLING CASE REFERENCE |
| | ) |
| JP MORGAN CHASE BANK, et al | ) IN SUPPORT OF PLAINTIFF'S |
| BANK OF NEW YORK MELLON,, | ) OPPOSITIONS TO MOTIONS TO DISMISS |
| et al | ) |
| | ) FEDERAL DEPOSIT INSURANCE CORP |
| Defendants | ) (FDIC) v. BANK OF NEW YORK MELLON |
| | ) UNITED STATES DISTRICT COURT |
| | ) for THE SOUTHERN DISTRICT NEW YORK |
| | ) Case No. 15-CV-06560 |

The FDIC (Federal Deposit Insurance Corp) has an active case filed against the Bank of New York Mellon (BNYM), in the U.S. District Court for the Southern District of New York, which has relevance, applicability and superceding governance over all BNYM loans, including at least two of the loans which are the subject of the instant controversy (1548 SE 30th Avenue, Portland, Oregon and 5246 SE Flavel Street, Portland, Oregon), that were originated by Countrywide Mortgage and later held, serviced or administered by the Bank of New York Mellon (BNYM) / BNYM as trustee for mortgage-backed asset certificates. FDIC v. BNYM Case No. 15-CV-06560 is active and ongoing as of this date - April 30, 2016 - deference to

which is essentially mandatory, and additionally supports the dismissal of the instant state court case of BNYM v. Barker.

The case brought by the FDIC against BNYM includes fraudulent conveyance of the Countrywide mortgage loans, false certifications, transfers effected without the requisite documents that void any standing of BNYM to foreclose on a property owner, pervasive failure to deliver complete mortgage document files, systematic disregard by BNYM for their duties and responsibilities as a trustee, and fraud.  Not only are the damages and recovbey at a monumental scale of billions of dollars, but the improperly documented and contractually defective transfers have eviscerated the standing of BNYM and/or BNYM as trustee to attempt to foreclose on these residential properties.

The complete text (59 pages) of the FDIC complaint is attached, and all documents thus far filed in their case are available in the public record (and readily at the disposal of the judiciary via the Pacer case information system); consequently, judicial notice of the case and all documents is requested.

The FDIC complaint lists twelve mortgage-backed securities funds, eight of which were derived from Countrywide Mortgage, and four of which were derived from EMC Mortgage (EMC Mortgage is involved with the 15268 Penny Avenue, Sandy, Oregon property, also in the instant case) which had been sold to Guaranty Bank, later taken over in receivership by the FDIC.  The subject case (Barker v JPMC, BNYM, BofA, Wells Fargo, EMC, et al) is identical, and involves precisely the same specific defects in the BNYM handling of this mortgage: the subject mortgage was originated by Countrywide Mortgage, was sold in one of the hundreds of thousands of "CDOs" (collateralized debt obligations) as the CWABS Series 2006 ("CWABS"

is an acronym for CountryWide Asset Backed Securities).  BNYM had attempted to conduct a foreclosure, trying to mitigate and cover up the damage they had done , yet they have attempted to do this from fatally defective position which is exposed in detail in the FDIC complaint.

Highlighting the most relevant aspects of the FDIC case to the subject case includes the following:

- Page ii:  BNYM is being held accountable for abdicating its fundamental duties as a trustee.  A trustee has an elevated level of responsibility not merely as fiduciary to its client or that party who is the true beneficiary of the trust, but in the case of these nationwide hundreds of thousands of mortgage loans administered by BNYM, they were responsible for overseeing, administering and carrying out of the actual tasks of mortgage loan document transfers, as well as regulatory and accounting reporting, and credit risk mitigation measures.  BNYM has, as the record and even their own admissions have revealed, abysmally failed in this regard, to the extreme detriment of all others involved...the homeowners, the investors who purchased the mortgage-backed asset securities, and all United States taxpayers who have paid out billions of dollars to BNYM (and BofA, Wells Fargo, JPMC)  through the U.S. Treasury 80% reimbursement program.  Relevant to the instant case is that the documents of transfer of the subject Note and Trust Deed are fatally defective, and cannot be used by BNYM to attempt any kind of foreclosure.

- Page 4, #10: "BNYM systematically disregarded these contractual and statutory duties", which has resulted in nullification of their standing as trustee - as the transfers to BNYM were fatally defective - and subjected BNYM to be required to forfeit the loans back to

the originators, who then would have custody and sole standing as the real-party-in-interest in any court action.

- Page 10, #29: The reports which are mandatory, per Item 1121 of SEC Regulation AB, were not completed and submitted by BNYM.

- Page 12, #34: The PSA (Purchase / Sale Agreement of the loan transfers) went from the sponsor to the depositor to the covered trust. However, as set forth in the PSA, complete file documentation is mandatory to carry with the sale, including, but not limited to, the original note, the original recorded trust deed, the original signed sale and transfer documents, the title report. When defects or missing documents are found, BNYM had 90 days to cure these defects, or the individual loan was required to be extracted from the CDO portfolio, and repurchased by BNYM, or a replacement loan with all documentation intact substituted in. In the instant case, the defects in the loan file were never cured by BNYM.

- Page 13 (a): the requirement of complete file documentation is made clear that this pertains to *each* individual loan.

- Page 14, #36: Sets forth in the PSA the complete file documentation that is mandatory to carry with the sale, including, but not limited to, the original note, the original recorded trust deed, the original signed sale and transfer documents, the title report.

- Page 14, #38: BNYM is required to issue a final certification and report, which they have failed to do in the subject loan.

Page 15, #39: Where defects are present, as in the subject loan, BNYM is required to repurchase or substitute a non-defective loan, which they failed to do [PSA 2.02 (a)].

- Page 21, #55:  The certifications provided by the Servicers (the entity which collected fees) were discovered to be false.

- Page 23, #64:  The implications of BNYM's failure to take physical possession of not only the original Notes, but the recorded trust deeds, the originals of the signed loan sale and transfer documents and the title reports, are foundational and monumentally critical: the party attempting to foreclose must have standing, and can do so if, and only if, it is the mortgagee.  If all loan file documents were not transferred, then the trust lacks standing to foreclose.  The securitization sponsor will thus own the note, not BNYM, or the investor or the MBS trustee for the MBS investor.

- Page 25, last sentence of #65:  "evidence would be revealed years later that many thousands of documentation exceptions were never cured"

Page 25, # 67: BNYM admitted publicly that they were aware of Countrywide Mortgage's <u>pervasive</u> failure to deliver complete mortgage files.

As revealed in the expert report by the very same expert retained by BNYM, Phillip R. Burnaman II, 117,899 Countrywide sponsored loans lacked complete documentation at the time of the June 2011 report.

Pages 25-26, #68:  The head of Global Document Custody Operations at BNYM testified in the BNYM Article 77 Proceeding that BNYM records contained a large magnitude of documentation  exceptions that were still uncured.

- Page 26, #69 & #70:  BNYM is unable to prove <u>ownership</u> of the Notre and Trust Deed - not merely 'possession'; the transfer chain must be fully and properly documented in order to prove legally valid ownership.

BNYM admitted in *Bank of New York v. Kirkland*, Case No. 07-16839 (N.Y. Sup. Ct. Dec. 11, 2007) that an action to foreclose on a mortgage had been commenced despite the fact that the promissory note had not been assigned to the trust that purportedly owned the note.

In *Bank of New York v. Gioio*, Case No. 08-9865 (N.Y. Sup. Ct. Sept 22, 2008), Bank of America and BNYM admitted that a note assignment had been executed two days prior to commencement of the action, contrary to requirements of state law.

Due to numerous documentation failures, BNYM was unable to prove it had legally traceable ownership of the note that was held in trust for investors, see The *Bank of New York Mellon v. Deane*, Index No. 16583/09, 2013 Slip Op, (N.Y. Sup.) and *Varian v. Bank of New York Mellon*, No. 21 LCR 490, MISC 12-462971, 2013 WL 4537421 (Com. Mass. Aug 23, 2013).

- Page 30, #77:  BNYM was aware that the Sponsors and Originator (Countrywide) had departed from their own underwriting guidelines, **engaged in predatory lending**, and **failed to ensure that mortgage loans complied with state and federal law**.

- Page 31, #82:  Monoline insurance covered losses resulting from any default. Consequently, and due to this insurance coverage - which was undisclosed by BNYM - no claim of actual financial injury can be maintained with any veracity by BNYM.

- Page 32, # 87:  The insurer's findings revealed "**pervasive** violations of underwriting and securitization guidelines".

- Pages 32-33, # 88: BNYM officers testified that they "became aware of mortgage fraud in Countrywide issues RMBS"  (RMBS is an acronym for Residential Mortgage Backed Securities).

- Page 33, #90:  The fraud was perpetrated by BNYM (and also concealed by BNYM, as they failed to act on their discoveries of non-compliant and fraudulently documented mortgages) as they continued to represent the CDO's as 'Triple AAA' rated, yet <u>all</u> of them were eventually downgraded to junk bond 'C' and 'D' status (see downgrade table on pages 33-34 of FDIC complaint).

- Page 45, # 117:  BNYM accepted certifications it knew to be false.

- Page 46-47, # 120:  BNYM provided false regulation certifications and reports.

- Page 48, #123:  BNYM was revealed to have been chronically overcharging borrowers, a group which includes ourselves in the subject loan.

- Page 48, #126:  BNYM was revealed to have been charging improper and excessive fees to borrowers, a group which includes ourselves in the subject loan.

## CONCLUSION

As plainly set forth in the active and ongoing FDIC complaint against BNYM, the handling, documentation and failures to correct defects in the Countrywide-originated loans have escalated their transgressions to fraud, as well as pervasive violations of state and federal laws, and voiding of the contracts in which they were engaged with the sponsors and investors in each loan.  This has served to render functionally defective any claim by BNYM that they are an actual real-party-in-interest in our loans, that they own our loans in a legally cognizable chain of conveyance and purchase, or that they have suffered (much less could prove) any financial injury.

Respectfully Submitted,

                                    __s/*Charles Barker III*_____

                                    Charles Barker III

Date: April 30, 2016        Plaintiff in Pro Se

Charles Barker III

Plaintiff in Pro Se
1548 SE 30th Avenue
Portland, Oregon 97214
motgagerecon@gmail.com
Tl: 503-860-3633

UNITED STATES DISTRCT COURT
FOR DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| CHARLES BARKER III | ) | |
| | ) | **CASE NO. 3:11-CV-00579-MO** |
| | ) | |
| Plaintiff | ) | |
| | ) | CERTIFICATE OF SERVICE |
| vs. | ) | |
| | ) | |
| JP MORGAN CHASE BANK, et al | ) | |
| BANK OF NEW YORK MELLON,, | ) | |
| et al | ) | |
| | ) | |
| Defendants | ) | |

    I hereby certify that I served a true copy of the Supplemental Brief and Controlling Case Reference was served on upon defendants attorneys of record on April 30 2016:


                                                      __s/*Charles Barker III*_____

Dated: April 30 2016                                       Charles Barker III
                                                         Plaintiff in Pro Se