IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**CHARLES BARKER, III, et al.**,

      Plaintiffs,                                 No. 3:11-cv-00579-MO

           v.                             OPINION AND ORDER

**JP MORGAN CHASE BANK, et al.**,

      Defendants.

**MOSMAN, J.**,

      Defendants move to dismiss Mr. Barker's claims for lack of standing and failure to state a claim. [183, 231, 234, 237] Defendants U.S. Bank and Bank of America also move for judicial notice of certain documents. [236, 238]  For the reasons stated below, I GRANT Defendants' Motion to Dismiss for failure to state a claim [183, 231, 234, 237] and DENY Defendants' Motions for Judicial Notice [236, 238].

      I.     <u>Background</u>

      This case comes before me on remand from the Ninth Circuit. Our plaintiff, Mr. Barker, is suing a variety of banks, foreclosure processing companies, and MERS in an effort to invalidate the loans on seven properties.[1]  When the suit was filed, Mr. Barker was joined as a plaintiff by his father-in-law, Mr. Dunham. They alleged violations of state and federal laws due to the Defendants' attempted, and in two cases completed, foreclosures on his property.  The

---

[1] Some of the properties had loans originating with his father- and mother-in-law.  Because I determine Mr. Barker has standing, I have simplified the analysis to assume the properties are Mr. Barker's.

Ninth Circuit remanded the case for reconsideration in light of the Oregon Supreme Court's decision in *Brandrup* and for further guidance from me on Mr. Barker's claims of "general unfairness." During the appeal, Mr. Dunham died. Upon remand, I allowed Mr. Barker to file an amended complaint. He brought many of the same claims he had previously pursued and added some new claims. In total, there are fourteen claims: 1) Fraud; 2) FDCPA violations; 3) violations of TILA; 4) "MERS not beneficiary;" 5) assignments of deed of trust are void; 6) Wrongful Foreclosure – Quiet Title; 7) Unjust Enrichment – Windfall Profits; 8) Securities Law violations; 9) RICO violations; 10) Conversion; 11) Unfair Practice- Gross Financial Inequity; 12) "Violations of Oregon Revised Statutes;" 13) GMAC Bankruptcy; and 14) Contracts of Adhesion. Defendants seek dismissal on two grounds. First, they argue Mr. Barker lacks standing to pursue these claims. Second, they attack the merits of his claims for failure to plead and failure to state a recognized cause of action. Upon review, I find Mr. Barker has standing but agree his claims should be dismissed on the merits. I therefore GRANT Defendants' Motions to Dismiss. Furthermore, due to the procedural posture of this case, I dismiss Mr. Barker's claims WITH PREJUDICE.

II.     <u>Standing</u>

Mr. Barker's standing to bring this suit has been at issue throughout the course of this litigation. The Ninth Circuit's mandate, Mr. Barker's unique positions with respect to the loans, and the death of Mr. Barker's co-plaintiff and father-in-law, Mr. Dunham, combine to create a puzzle regarding Mr. Barker's standing. The North Star for any analysis of this puzzle must be the Ninth Circuit's mandate.

In its mandate, the Ninth Circuit wrote "Dunham has standing to pursue his claim, and Barker is not committing the unauthorized practice of law." While this is not an explicit edict on

Mr. Barker's standing, I will do my best to connect the logical dots.  Mr. Barker is not a lawyer, yet he signed the opening and reply briefs.  Therefore the Ninth Circuit, in determining he was not committing the unauthorized practice of law, seems to have determined he had standing to pursue his own claims.  Indeed, the Ninth Circuit explicitly stated "Barker and Dunham proceed here as co-appellants."  While the Ninth Circuit never expressly answered the question of Mr. Barker's standing, I conclude that at the time of the Mandate, it found he had standing to pursue his claims.  It would be improper for me to ignore the Ninth Circuit's conclusions.

Defendants ask me to disregard the Ninth Circuit's holding and to find Mr. Barker has no standing due to the intervening event of Mr. Dunham's death.  Certainly, Mr. Barker cannot represent the estate of Mr. Dunham, as Mr. Barker is not a lawyer. *See In re Aston-Nevada Ltd. P'ship*, 409 F. App'x 107, 110 (9th Cir. 2010) (noting an individual cannot represent an estate *pro se*).  However, nothing about Mr. Dunham's death, which pre-dated the mandate, changes the holding of the Ninth Circuit that Mr. Barker has standing to pursue his own claim. The estate needs a lawyer; Mr. Barker does not and may pursue his claims.  The Ninth Circuit's analysis did not limit Mr. Barker's standing to certain loans or certain claims, and I decline to do so here.  Given Mr. Barker's standing, I turn to the merits of his claims.

III.    Merits

While Mr. Barker may have standing, he fails to meet the legal requirements necessary to state a claim. He has either: 1) failed to plead with sufficient particularity (i.e. his fraud and RICO claims); 2) failed to bring a legally recognized cause of action (i.e. his "windfall profits" and "unfair practice" claim); or 3) failed to bring a claim his facts can support (i.e. his conversion claim).  I address each claim below.

a.   Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only

"labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will

not suffice. *Id*. (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original). While the

plaintiff does not need to make "detailed factual allegations" at the pleading stage, the

allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the

grounds on which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam)

(citing *Twombly*, 550 U.S. at 555).

b.   Discussion

i.   Fraud

Plaintiff roots his fraud claim in several theories.  First, he alleges all Defendants signed

affidavits in the foreclosure proceedings which were fraudulent.  Second, he argues the use of

non-judicial foreclosure is fraudulent. Third, he argues Defendants have acted fraudulently in not

producing the Notes related to his Deeds of Trust. Fourth, he argues the existence and use of

MERS is fraudulent.  Mr. Barker fails to plead any theory with the particularity required by

FRCP 9(b).  Even if he were to plead with sufficient particularity, all but one theory is

substantively flawed.

"In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." FED. R. CIV. P. 9(b). A plaintiff must "state the time, place, and

specific content of the false representations as well as the identities of the parties to the

misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th

Cir. 1986); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The Rule 9(b) particularity requirement is designed "to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Under any of his theories of fraud, Plaintiff has filed to state with particularity the details surrounding the fraudulent conduct.   For example, under his first theory—the affidavits used in one of the foreclosure proceedings were fraudulent—Plaintiff states "[t]he Defendants . . . have signed affidavits and other documents in these Oregon foreclosure proceedings [] which contained representations [] which were material . . . some of which were made with knowledge of falsity and others which were made with utter disregard for whether they were true of false." (Pl. Am. Comp. at 45.)  Plaintiff does not specify to which affidavits he is referring, when they were made, which Defendants are connected with which affidavits, or even how the affidavits were false or misleading.   The other theories are similarly vague.  Plaintiff has failed to plead his fraud claim with the required particularity of Rule 9(b).  I therefore GRANT Defendants' motions to dismiss Plaintiff's fraud claim.

Even were I to proceed to the merits of his fraud theories, almost all of them should still be dismissed substantively.  First, Mr. Barker provides no legal support for the proposition that non-judicial foreclosures are fraudulent.  Second, the Ninth Circuit affirmed my earlier holding that there is no requirement the lenders produce the Note.  Finally, the existence and use of MERS is not "fraud."  While the Oregon Supreme Court has held MERS cannot be a beneficiary, its participation in loan agreements does not make the loans *per se* invalid.  *See Niday v. GMAC Mortg., LLC*, 353 Or. 648, 658, 302 P.3d 444 (2013).  Mr. Barker's only remaining theory is that Defendants have somehow filed fraudulent affidavits in connection with the Oregon foreclosure

proceedings.  And, as stated above, Mr. Barker is woefully inadequate in his pleadings on that front.

                    ii.   Fair Debt Collection Practices Act

Mr. Barker's second claim alleges Defendants violated 15 U.S .C. § 1692, part of the Fair Debt Collection Practices Act (the "FDCPA"), by taking or threatening to take action to dispossess Mr. Barker of his property when there was no present right to Defendants' possession. In addition, Mr. Barker alleges Defendants violated the FDCPA by using false or misleading representations or means in collecting a debt.  I have previously rejected Mr. Barker's earlier FDCPA claim [155, pp. 3-4] and while I do not believe the Ninth Circuit's ruling calls that decision into question, in an abundance of caution I again address the merits of Mr. Barker's claim.  I find the FDCPA claim should be dismissed.

Mr. Barker appears to be alleging Defendants violated two of the FDCPA's provisions. The first, 15 U.S.C. § 1692e, provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The second, 15 U.S.C. § 1692f, provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  "Because these prohibitions apply only to 'debt collector[s]' as defined by the FDCPA, the complaint must plead 'factual content that allows the court to draw the reasonable inference' that [Defendants are] debt collector[s]." *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013) (finding plaintiff did not adequately plead Wells Fargo as a "debt collector" under the FDCPA) (citations omitted).   Mr. Barker has failed to do so for all but one Defendant.

The FDCPA defines the phrase "debt collector" to include: (1) "any person who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  For purposes of my analysis, there are two groups of defendants:  "the Banks" and Defendant ReconTrust.[2]  I define "the Banks" as the originator of the loans: Bank of America, U.S. Bank, JP Morgan Chase, etc., as well as MERS.  Plaintiff's claim against the Banks fail as there is nothing in his complaint sufficient to allege either that "the principal purpose" of their business is to collect debts or that they collect debts "due another."  In the case of MERS, Plaintiff provides no evidence to suggest it is involved in debt collection at all.

Defendant ReconTrust requires a closer look.  Plaintiff has alleged ReconTrust is a "foreclosure processing company."  (Pl. Am. Compl. at 28.)  By alleging ReconTrust as a "foreclosure processing company," I find Plaintiff has arguably alleged the "principal purpose" of ReconTrust's business is the collection of debts—if one assumes a Deed of Trust, mortgage, or foreclosure is a debt.[3]

The question remains whether the loan obligation in a Deed of Trust is a "debt" under the FDCPA.  A "debt" is defined in the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household

---

[2] Plaintiff brought this claim initially against several other Defendants, but, at this point, all others have been dismissed from the suit.

[3] *But see De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1075 (9th Cir. 2011) (citing S. Rep. No. 95–382 (1977) (debt collector does not include those "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing"), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698; Fed. Trade Comm'n, Staff Commentary on the Fair Debt Collection Practices Act § 803, 53 Fed.Reg. 50097, 50103 (Dec. 13, 1988) (exemption in § 1692a(6)(F)(iii) was intended to apply to mortgage companies and other parties "whose business is servicing *current* accounts"), *available at* www.ftc.gov/os/statutes/fdcpa/commentary.shtm# 802 (emphasis added)); *accord FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007); *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 538 (7th Cir. 2003).  Neither the complaint not the briefing indicates when ReconTrust became the servicer of the mortgage.  Plaintiff's language referring to ReconTrust as a "foreclosure" processing company indicates ReconTrust was involved once the loan was in default and thus ReconTrust would qualify temporally as a debt collector under the FDCPA.

7 – OPINION AND ORDER

purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Courts in the District of Oregon have held "foreclosing on the property pursuant to a deed of

trust is not the collection of a debt within the meaning of the FDCPA." *Hulse v. Ocwen Fed.*

*Bank,* 195 F. Supp. 2d 1188, 1204 (D. Or. 2002); *see also Hinderlie v. Bank of Am., NA*, 2014

WL 104970, at *2 (D. Or. Jan. 9, 2014); *Lampshire v. Bank of America, NA,* 2013 WL 1750479,

at *3 (D. Or. Apr. 20, 2013).  The judges who have found foreclosure not to be a debt have

reasoned:

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay
> money. The FDCPA is intended to curtail objectionable acts occurring in the
> process of collecting funds from a debtor. But, foreclosing on a trust deed is an
> entirely different path. Payment of funds is not the object of the foreclosure action.
> Rather, the lender is foreclosing its interest in the property.
>
> An important point here is that with a trust deed, the trustee possesses the power of
> sale which may be exercised after a breach of the obligation for which the transfer
> in trust of the interest in real property is security. O.R.S. 86.710. Foreclosure by the
> trustee is not the enforcement of the obligation because it is not an attempt to
> collect funds from the debtor.

*Hulse at*  1204 *disapproved of by McNair v. Maxwell & Morgan PC*, 2015 WL 6735240 (D.

Ariz. Nov. 4, 2015).

    The Ninth Circuit has not explicitly addressed the question of whether a foreclosure is a

debt collection.  However, it has tangentially addressed the issue in two conflicting cases.  The

first held that notice of a foreclosure sale sent to the mortgagor "did not seek to collect the debt,

the conduct forbidden under the statute." *Santoro v. CTC Foreclosure Serv.*, 12 F. App'x 476,

480 (9th Cir. 2001). The second case found a bank and its attendant mortgage companies did not

qualify as "debt collectors" within the meaning of the FDCPA because they became involved

with the plaintiff's mortgage before it was in default. *Christie v. Bank of New York Mellon, N.A.*,

617 F. App'x 680, 683 (9th Cir. 2015).  The reasoning of the second case, when reversed,

suggests mortgages *can* be debts. That is, if a mortgage servicing company becomes involved *after* a homeowner has defaulted, that company would then be considered a "debt collector," which means, by extension, that a mortgage is a "debt" under the FDCPA. This interpretation is supported by the legislative history of the FDCPA. In particular, the Senate Report on the Act noted "the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; **the collection of debts, such as mortgages and student loans**, by persons who originated such loans; mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing . . . ." *See* S. Rep. No. 95–382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad. News 1695, 1698 (emphasis added). This language strongly suggests a mortgage or Deed of Trust can be a debt, and an entity like ReconTrust can be a debt collector, so long as the collection activities occur after the debt is in default. Given the direct language of the legislative history, the Ninth Circuit's exclusion of mortgage servicers only when the loan is not in default, and a common sense understanding of what a mortgage is, I find a mortgage can be a debt under the FDCPA.[4]

Regardless of whether ReconTrust is a debt collector or whether a mortgage is a debt, ReconTrust argues the FDCPA has a one-year statute of limitations that should bar Mr. Barker's action because it relates to the creation of the loans, which happened more than one year before Mr. Barker filed suit. ReconTrust is correct there is a one-year statute of limitations. 15 U.S.C. § 1692k ("An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs.") However, Mr. Barker alleges, in addition to the creation of the loans, the Defendants "made it unknown and still unknowable

---

[4] Any trial judge dealing with apparently conflicting Ninth Circuit authority faces the risk of being referred to on appeal by the dreaded phrase "the learned trial judge," but that is my ruling.

who was/is the actual owner of the loan" and "threatened and attempted foreclosure, and utilized unlawful practices" in that foreclosure. (Pl. Am. Compl. at 55.) Both of those descriptions could encompass acts occurring from May 2010 to May 2011, when this suit was filed. Neither Mr. Barker nor any Defendant provides a time for those actions and so dismissal on statute of limitations would be inappropriate for theories based on actions other than the initial loan creation.

However, even given the analysis above, Mr. Barker's complaint fails to state a clam for violations of the FDCPA. Plaintiff alleges ReconTrust "intentionally created a trust deed document that was confusing and misleading, . . . made it impossible for Plaintiff to be able to engage in any loan resolution, . . . threatened and attempted foreclosure, and utilized unlawful practices." (Pl. Am. Compl. at 55.) As stated above, Mr. Barker appears to be alleging Defendants violated two of the FDCPA's provisions. The first, 15 U.S.C. § 1692e, provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Any claim under this provision would be grounded in fraud and as Mr. Barker again fails to meet the level of specificity required for fraud claims, any claim under this theory is DISMISSED. *See* FED. R. CIV. P. 9(b). The second provisions Mr. Barker may be invoking is 15 U.S.C. § 1692f, which provides a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Mr. Barker's allegations that ReconTrust intentionally created a confusing trust deed and prevented Plaintiff from engaging in loan resolution do not amount to "unfair or unconscionable means to . . . collect any debt." *Id.* Only Mr. Barker's allegation that ReconTrust "threatened and attempted foreclosure, and utilized unlawful practices" could even plausibly be considered an allegation under 15 U.S.C. § 1692f. To the extent it is such an allegation, Mr. Barker has failed to meet

even the less stringent requirement of *Twombley and Iqbal.   See Iqbal*, 556 U.S. at 678 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

iii.   Violation of the Consumer Credit Protection Act (TILA)

For his third claim, Mr. Barker brings a Truth in Lending Act ("TILA") claim against

BNY Mellon, ReconTrust, Bank of America, and MERS.   "TILA provides borrowers only two

remedies for disclosure violations: (1) rescission, *see* 15 U.S.C. § 1635 and (2) damages ."

*Wienke v. Indymac Bank FSB*, 2011 WL 871749, at *7 (N.D. Cal. Mar. 14, 2011) (citing 15

U.S.C. § 1640).   The Supreme Court has explained "that the borrower's right of rescission 'shall

expire in three years after the date of consummation of the transaction or upon the sale of the

property, whichever occurs first,' even if the required disclosures have never been made." *Beach*

*v. Ocwen Federal Bank,* 523 U.S. 410, 413 (1998) (quoting 15 U.S.C. §1635(f)). Here, Plaintiff's

loans were completed in 2006 and his suit was filed in 2011, well past the three-year period for

recession.  That leaves only damages claims available for Plaintiff.

Damages claims are to be brought "within one year from the date of the occurrence of the

violation."[5] 15 U.S.C. § 1640(e).  No theory related to Mr. Barker's "Bluff" property can be

pursued as it was foreclosed in 2009, two years before the initiation of this suit.  Indeed, under

this limitation, the only successful basis for his claim would be allegations that Defendants

transferred the loan on his "30th property" in the year before his suit and failed to send him the

proper disclosures.  I interpret Mr. Barker's "failure to disclose" theory as an allegation that

Defendants violated "Regulation Z" of the Truth in Lending Act. 12 C.F.R. § 1026.39.

Regulation Z requires banks who acquire loans to send consumers disclosures that "identify the

---

[5] There are three exceptions: section 1639, 1639(b) and 1639(c) have a three year statute of limitations.  These sections outline respectively "requirement for certain mortgage;" "residential mortgage loan origination;" and "minimum standards for residential mortgage loans."   Mr. Barker does not appear to be alleging violations of any of these provisions, and even if he were, they are tied to the initial issuance of the loan (rather than assignments of the Deed of Trust) and so the three-year period would have run.

mortgage loan that was sold, assigned or otherwise transferred, and state . . . the name, address, and telephone number of [the Bank]. . . [and] the date of transfer." 12 C.F.R. § 1026.39 (laying out further requirements of lenders). Mr. Barker alleges only that Defendants "fabricated a condition of untrue disclosure." (Pl. Am. Compl. at 61.) That is insufficient to state a claim for a violation of Regulation Z, particularly because in the previous paragraph Mr. Barker *does* come much closer to stating a claim when he alleges "failures to disclose alleged multiple transfers of ownership of the Note and/or Trust Deed." *Id.*[6] Mr. Barker may *want* to claim the Defendants involved failed to notify him, but what he actually alleges is Defendants did issue a disclosure; it was simply an "untrue" disclosure. In essence, Mr. Barker is making a fraud claim rather than a TILA claim, and Mr. Barker certainly has not met the required pleading standard for a fraud claim to survive. *See supra* at i. I therefore GRANT the motion to dismiss Plaintiff's third claim.

### iv. MERS not a Beneficiary

Plaintiff's fourth claim is styled "MERS not beneficiary" and states only that the Oregon Supreme Court in *Brandrup* held "MERS cannot serve as a valid trust deed beneficiary." (Pl. Am. Compl. at 62.) While the Oregon Supreme Court did hold in *Brandrup v. ReconTrust Co., N.A.*, 353 Or. 668 (2013), that "MERS could not satisfy the statutory definition of a beneficiary," I have previously found "there is nothing in that decision to support the contention that the mere involvement of MERS in the loan will render the lien invalid." *Chruszch v. Bayview Loan Servicing, LLC*, 2015 WL 6756130, at *3 (D. Or. Nov. 4, 2015); *see also Lind v. Fidelity Nat'l Title Ins. Co.*, 2014 WL 2450775, at *2 (D. Or. May 30, 2014) ("while [*Brandrup*] does hold that MERS does not meet the statutory definition of a beneficiary, it does not hold that the mere

---

[6] This claim is barred by the statute of limitations.

involvement of MERS invalidates the loan"); *Niday v. GMAC Mortg., LLC*, 353 Or. 648, 302 P.3d 444 (2013).  I therefore GRANT the motion to dismiss this claim.

v.   The Assignment of Subject Deeds of Trust are Void

Plaintiff's fifth "claim" simply refers the Court to a California state law case, *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013).  Referring to another court case, even for a *pro se* petitioner, is not enough to state a claim.  Even if it were, *Glaski* is not applicable here. First, it is based on California law, not Oregon or federal law.  Second, the Ninth Circuit has rejected its application to foreclosure cases in several instances stating, it "is unpersuasive authority . . . given the vast weight of California precedent" that has diverged from the holding of *Glaski.  Christie* 617 F. App'x at 682 (citing *Yvanova v. New Century Mortg. Corp.*, 172 Cal. Rptr. 3d 104, 110 (Cal. Ct. App. 2014) ("[N]o California court has followed *Glaski* . . .  and many have pointedly rejected it.")); *accord Hunt v. U.S. Bank N.A.*, 593 F. App'x 730, 731 (9th Cir. 2015) (noting *Glaski* has been "widely rejected") (citing *Bowen v. Bank of N.Y. Mellon*, 2014 WL 6673272, at *4 (Cal. Ct. App. Nov. 25, 2014) (unpublished)).   Finally, even if I were to apply *Glaski* as if it were Oregon law, it is distinguishable from our case.  Unlike Mr. Barker, the plaintiff in *Glaski* was a borrower and thus in privity of contract with the lender.  *Glaski,* at 1080 (a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment).  When the Plaintiff is not a borrower, this Court has refused to apply *Glaski. See Gibson v. PNC Bank Nat. Ass'n*, 2014 WL 1333985, at *4 (D. Or. Apr. 2, 2014).  I therefore GRANT the Motion to Dismiss Plaintiff's fifth claim.

//

//

//

//

vi.   Wrongful Foreclosure – Quiet Title

Plaintiff's sixth claim is titled "wrongful foreclosure – quiet title."  In construing the complaint in favor of Mr. Barker, I view and analyze his sixth claim as two separate claims—one for wrongful foreclosure and another for quiet title.

1.   Wrongful Foreclosure

Mr. Barker alleges MERS is not a beneficiary.  He is correct.  However, he fails to state a cause of action for wrongful foreclosure, because he fails to show how MERS (or any other Defendant) has wrongfully foreclosed. Indeed, for most Defendants, Mr. Barker has failed to show *any* foreclosure, something that is fatal to his claim as "Oregon does not recognize a claim for wrongful attempted foreclosure." *Vettrus v. Bank of Am., N.A.*, 2012 WL 5462914, at *4 (D. Or. Nov. 6, 2012) (citing cases); *see also Chruszch*, 2015 WL 6756130, at *3.

 Mr. Barker's ability to bring a wrongful foreclosure claim is limited to the two properties where a foreclosure did take place: the "Broadway" property and the "Bluff" property.  In his complaint, Mr. Barker names U.S. Bank, JPMC, Chase, Wells Fargo, BAC, BNYM, ReconTrust, Quality, and Executive as defendants under this claim.  However, earlier in his complaint, Mr. Barker only identifies GMAC, Aurora, First American, Quality Loan Service Corp, LSI Title Company, Executive, and MERS as companies involved with either or both of the relevant properties. The only one of those Defendants which has not been dismissed is MERS, but Mr. Barker has included nothing in his complaint to indicate MERS took any action in the foreclosure. Indeed, he admits it was GMAC, no longer a party to this case, who "claimed to be the holder of the promissory note and mortgage that formed the basis for their foreclosure action."  (Pl. Amend. Compl. at 37-38.)  Plaintiff cannot make out a claim for wrongful foreclosure because the only party against whom he could bring it is no longer a part of this action.

Even if Plaintiff could bring his wrongful foreclosure claim against one of the parties above, to state a claim Plaintiff must allege that he "could and would have cured the default." OR. REV. STAT. ANN. 86.767 (2)(c) (West 2016). He has not done so.   I therefore GRANT the motion to dismiss the wrongful foreclosure claim.

### 2.   Quiet Title[7]

Generally, "a person may bring an equitable quiet title action to obtain resolution of a dispute relating to adverse or conflicting claims to real property." *Staton*, 2014 WL 1803376, at *8 (citing *Spears v. Dizick*, 235 Or. App. 594, 598, 234 P.3d 1037 (2010)). In order to prevail in a quiet title action, a plaintiff "must prove that [he has] a substantial interest in, or claim to, the disputed property and that [his] title is superior to that of the defendants." *Coussens v. Stevens*, 200 Or. App. 165, 171, 113 P.3d 952 (2005). A plaintiff must rely on the strength of his own title, not the weakness of a defendant's title. *Id.* To rely on the strength of his own title, a "plaintiff must expressly allege that: (1) his title is superior to that of defendants' and (2) 'the subject loan has been satisfied or that plaintiff is ready, willing and able to tender the full amount on the loan.'" *Oliver v. Delta Fin. Liquidating Trust*, 2012 WL 3704954, at *5 (D. Or. Aug. 27, 2012) (quoting *Rigor v. Freemont Inv. & Loan*, 2012 WL 913631, at *1 (D. Or. Feb 13, 2012) (collecting cases)). Here, Mr. Barker does not allege he tendered the amounts due under the deed of trust or is ready, willing, and able to do so. Accordingly, his quiet title claim fails to meet this crucial element and I DISMISS his claim.

### vii.   Unjust Enrichment – Windfall Profits

---

[7] MERS argues that because in his response Plaintiff has not contested its Motion as to Plaintiff's TILA claim, his "GMAC Bankruptcy" claim, his "Intentional Enticement and Profiteering" claim, and his quiet title claim, they must be deemed conceded, and the Court should dismiss those  claims. *See Bojorquez v. Wells Fargo Bank, NA*, 2013 WL 6055258, at *5 (D. Or. Nov. 7, 2013)  ("If a party fails to counter an argument that the opposing party makes in a motion, the court may  treat that argument as conceded.") (citation and internal quotations and brackets omitted); *Nemeth v. Ellena*, 2015 WL 2375982, at *4 (D. Or. May 18, 2015) (same).  However, due to the nature of the Ninth Circuit's remand and Plaintiff's *pro se* status, I address the merits of Plaintiff's allegations.

Plaintiff's seventh claim is less a traditional unjust enrichment claim and more a diatribe on the comparative wealth of national banks in regards to his net worth. As such, he fails to state a claim for unjust enrichment. In a traditional claim for unjust enrichment, Plaintiff must plead: (1) a benefit conferred upon the defendant *by the plaintiff*; (2) an awareness by the defendant of the received benefit; and (3) the retention by the defendant of the benefit as to make it unjust for the defendant to retain the benefit without the payment of its value. *See Cron v. Zimmer*, 255 Or. App. 114, 130, 296 P.3d 567 (2013). Mr. Barker claims the banks were unjustly enriched by governmental actions, not from anything Mr. Barker gave them. Indeed, the opposite is the case. The *sine qua non* of this dispute is that Mr. Barker has failed to give Defendants the money they were due and so they have proceeded to foreclosure. Mr. Barker's allegation that it is unjust that he "has no similar access to windfall profits" is untenable. (Pl. Am. Compl. at 67.) I therefore GRANT the Motion to Dismiss at to the seventh claim.

> viii.    Securities Laws Section 17(a)(2) and (3) of the Securities Act of 1933 Fraudulent Interstate Transactions

The Ninth Circuit has found there is no private right of action under section 17(a) of the Securities Act of 1933. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987) (*en banc*); *see In re Sherman*, 491 F.3d 948, 960 (9th Cir. 2007). As such, I GRANT Defendants' Motions to Dismiss Plaintiff's seventh claim.

> ix.    RICO Violations

Mr. Barker's ninth claim alleges Defendants engaged in violations of the Racketeer Influences and Corrupt Organizations Act ("RICO"). The heightened pleading requirements for fraud are equally applicable to RICO claims. *Alan Neuman Prods.*, *Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1989) (quotations omitted); *see also Millan v. Clinton*, 54 F. App'x 485, 486 (9th Cir. 2003). The Ninth Circuit has interpreted Rule 9(b) to require pleaders to specify

the identities of the parties to fraudulent misrepresentations, where and when the alleged

misrepresentations occurred, and the specific content of the false misrepresentations. *See*

*Schreiber*, 806 F.2d at 1401.  Mr. Barker has failed to do so here and has alleged only that

Defendants have engaged in a "pattern of behavior" which "conforms to the definition of

racketeering."  Plaintiff goes on to allege Defendants have "contrived, conspired and colluded to

create . . . an illegal scheme of recordation, commonplace utilization of falsified documents, and

intentionally obstructed justice in hiding documents." (Pl. Am. Compl. at 78.) Plaintiff does not

state when any of these actions happened, which Defendants did which actions, and which

documents are involved.  He has thus failed to meet the heightened standard of Rule 9(b) and I

GRANT Defendant's Motion to Dismiss.

    x.   Conversion

An individual commits the act of conversion when, without the legal right to do so, he or

she exercises "dominion or control over a chattel which so seriously interferes with the right of

another to control it that the actor may justly be required to pay the other the full value of the

chattel." *In re Peterson*, 348 Or. 325, 335, 232 P.3d 940, 946 (2010) (quoting definition found in

*Restatement (Second) of Torts* § 222A (1965)) (citations omitted).  A chattel is "[m]ovable or

transferable property; personal property; esp. a physical object capable of manual delivery and

not the subject matter of real property." *Chattel* BLACK'S LAW DICTIONARY (10th ed. 2014).

This district has previously rejected claims for conversion in the foreclosure context because real

property is not chattel.  *See, e.g., Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085, 1092

(D. Or. 2011) (finding "the real property subject to [a typical] trust deed is not a chattel and

plaintiff's claim as to the real property cannot be construed as a claim for conversion"). Because

Mr. Barker alleges the loss only of his real property, he cannot satisfy the "chattel" requirement.[8] I therefore GRANT the motion to dismiss his conversion claim.

### xi.    Unfair Practices – Gross Financial Inequity

Mr. Barker states no legally cognizable claim merely alleging defendants "have acted in collusion and caused a gross financial equity to occur." (Pl. Am. Compl. at 79-81). Mr. Barker further alleges defendants have engaged in "unfair and bad faith dealing." *Id*. at 82. Neither is sufficient to state a cause of action. I therefore GRANT the motion to dismiss Mr. Barker's eleventh claim.

### xii.    Violations of Oregon Statutes

Mr. Barker alleges Defendants have "engaged in a pattern and practice of unfair, deceptive, and unconscionable acts" in violation of ORS 86.010 to 86.795. Mr. Barker thus alleges Defendants have violated *the entire chapter* that governs Mortgages and Trust Deeds in the Oregon Code. While the plaintiff does not need to make "detailed factual allegations" at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555). Plaintiff has not done so here.

Even if, in an effort to narrow Mr. Barker's allegations, I cross-reference his twelfth claim on the eighty-third page of his complaint with his recital of facts on the twenty-first page where he lists his foreclosed properties and notes two were sold at a trustees' auction "in violation of ORS 86.735," Plaintiff's complaint would still fail. (Pl. Am. Compl. at 21.) First, ORS 86.735, renumbered ORS 86.752 in 2013, governs the "foreclosure of trust deed by advertisement and sale." OR. REV. STAT. ANN. 86.752 (West 2016). However, this provision

---

[8] In his reply, Mr. Barker claims he has lost, or will lose, the personal property inside of the home. He includes nothing in his complaint that suggests as much, nor does that allegation comport with a traditional understanding of the foreclosure process.

addresses non-judicial foreclosures and implicates only GMAC, no longer a party to this action.

In addition, even if I were inclined to allow Mr. Barker to proceed against the remaining

Defendants under this theory, which I am not, it is still impossible to ascertain *which* of the

several requirements of  ORS 86.752 Defendants allegedly failed to complete.   I therefore

GRANT the motion to dismiss.

### xiii.   GMAC Bankruptcy

In his thirteenth claim, Plaintiff fails to state a cause of action.  Plaintiff recounts the fact

that he dismissed former Defendant GMAC due to the company's bankruptcy.  He states it is

uncertain if there is jurisdiction in a bankruptcy court and identifies Doe #1 as the successor in

interest to GMAC.  He does not ask the court to do anything, nor does he cite to specific

statutory or common law claims.  Overall, the claim does not state a cognizable claim for relief

and I GRANT Defendants' Motions to Dismiss as to the thirteenth claim.

### xiv.   Contracts of Adhesion

Plaintiff's fourteenth, and final, claim alleges his loan contracts are void or voidable

because they are contracts of adhesion and thus unconscionable.[9] A contract of adhesion is "an

agreement between parties of unequal bargaining power, offered to the weaker party on a 'take-

it-or-leave-it' basis." *Sprague v. Quality Rest. Nw., Inc.*, 213 Or. App. 521, 526, 162 P.3d 331

(2007), *citing Reeves v. Chem Industrial Co.*, 262 Or. 95, 101 (1972); *see also Jensen v. Fisher*

*Commc'ns, Inc.*, 2014 WL 6851952, at *5 (D. Or. Dec. 3, 2014).  Contracts of adhesion are often

viewed as procedurally unfair, and may be void when coupled with unfair or unreasonable

---

[9]Defendants note that if Mr. Barker argues adhesion contracts are unconscionable; it is a defense not a claim.  *See Chan v. Chase Home Loans, Inc*., 2012 WL  1252649, *9 (W.D. Wash. 2012) (citation omitted); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1185- 86 (W.D. Wash. 2010); *see also Bennett v. Behring Corp.*, 466 F. Supp. 689, 700 (S.D. Fla. 1979) ("neither the common law of Florida, nor that of any other jurisdiction allow "for the affirmative recovery of money damages" under the "theory of unconscionability").

substantive terms. *See Sprague,* 213 Or. App. at 526 (finding a contract of adhesion evidence of procedural unfairness). "However, under Oregon law, the fact that a contract is adhesive does not alone render it unenforceable." *Id.* In fact, contracts of adhesion "are a common feature of contemporary commercial life" and are regularly enforced by Oregon courts. *Id.* The adhesive nature of a contract is but one factor courts use to determine whether a contract or contract provision is unconscionable. *Id.* Mr. Barker points to nothing unique about his contract, as opposed to every other mortgage contract, that would make it particularly onerous. Even if I were to find Mr. Barker's contracts are contracts of adhesion, it would be insufficient to void them. A party seeking to void a specific clause of a contract must demonstrate that the clause is "unfair or unreasonable." *See Reeves v. Chem Indus. Co.*, 262 Or. 95, 101, 495 P.2d 729 (1972). Mr. Barker has not done so here. I therefore GRANT the motion to dismiss.

IV.    Dismissal with Prejudice

Courts have discretion to deny leave to amend where amendments would be futile. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir. 1983). I dismiss Mr. Barker's claims with prejudice and find that any amendment would be futile for several reasons. First, Mr. Barker acknowledges in his complaint that his claims are part of a "fishing expedition" to find through discovery what he does not yet know. This is not a permissible use of a complaint. *See Gutierrez v. Givens*, 989 F. Supp. 1033, 1044 (S.D. Cal. 1997) ("The pleading requirement is designed to thwart baseless complaints and fishing expeditions.").On page twelve of his complaint, Mr. Barker states what he has "been striving to accomplish" is "to determine what really went on, whether the banks acted legally or illegally." (Pl. Am. Comp. at 12.) In particular, this fatally wounds the majority of his claims which are based on fraud as Mr. Barker explicitly acknowledges participating in the very behavior against

which the heightened fraud pleading standard was designed to protect.  Second, and most importantly, I dismiss with prejudice due to the postural procedure of the case.  Mr. Barker has had three complaints. After the first was filed, he had the benefit of my rulings from the motion for preliminary injunction.  After the second was filed, he had the benefit of both my ruling on the injunction, my ruling on the motion to dismiss, and the Ninth Circuit's Mandate.  Mr. Barker's current Amended Complaint [179] makes clear he chooses to willfully disregard the limitations pointed out by his opponents and recognized by both myself and the Ninth Circuit. Even during his third opportunity to amend, he chose to disregard my dismissal and the Ninth Circuit's affirmance of certain claims and introduce them once again forcing both Defendants and the Court to deal with issues that had already been decided.  If given a chance to amend, Mr. Barker will likely be unable to limit himself to the narrow instructions of the Court.  Further, there is little in his complaint to suggest even if he could exercise restraint, he would be able to save his complaint by a further opportunity to amend.

   V.    Motions for Judicial Notice

   In addition to their Motions to Dismiss, Defendants file two Motions for Judicial Notice. Plaintiff has not objected to either.  For the reasons stated below, I DENY both Motions for Judicial Notice.

   The first Motion for Judicial Notice [238], filed by U.S. Bank, asks that I take judicial notice of two opinions written by Judge McShane in cases involving Mr. Barker.  Essentially, the cases recap how difficult and disobedient Mr. Barker had been in Judge McShane's court.  Judge McShane notes the many other cases Mr. Barker has filed that are related to this case and denies him leave to amend and awards attorney fees to the Defendants due to Mr. Barker's intransigence.  "As a general rule, a court may not take judicial notice of proceedings or records

in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *see also Wyatt v. Terhune*, 315 F.3d at 1108 n. 5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice") (overruled on other grounds).  Although Judge McShane's opinion includes mixed facts and law, I DENY the Motion for Judicial Notice [236] in an abundance of caution.  None of the law included in Judge McShane's case adds substantively to our analysis and I have had enough experience with Mr. Barker to form my own opinion of his character and motives.

The second Motion for Judicial Notice [236], filed by Bank of America, asks that I notice the promissory notices, deeds of trust, appointment of successor trustees, and assignments of deeds of trust.  Defendants argue the Ninth Circuit allows you to take notice of such documents when they are referenced in Plaintiff's complaint and no parties dispute the authenticity of the documents.  Plaintiff, although he does not object, has leveled accusations of fraud and forgery against Defendants.  I assume, therefore, that Mr. Barker does contest the authenticity of the submitted documents and DENY the motion for judicial notice [236].

VI.    Conclusion

 For the reasons stated above, I GRANT Defendants' Motions to Dismiss [183, 231, 234, 237] and DENY Defendants' Motions for Judicial Notice [236, 238].

DATED this __7th__ day of July, 2016.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
Chief United States District Judge